# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JENNIFER R. LARD, JOHN G. JUERGENS, GERALD L. ROBINSON, SCOTT W. ANDERSON, THOMAS A. PITERA, SHARON BRADLEY-SMITH and TORANZ J. PLUMMER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARMON HOLDINGS, INC., THE BOARD OF DIRECTORS OF MARMON HOLDINGS, INC., MARMON RETIREMENT ADMINISTRATIVE COMMITTEE and JOHN DOES 1-30,<br><br>Defendants. | Case No. 1:22-cv-4332<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Jennifer R. Lard, John G. Juergens, Gerald L. Robinson, Scott W. Anderson, Thomas A. Pitera, Sharon Bradley-Smith, and Toranz J. Plummer (collectively, "Plaintiffs"), bring this putative class action[1] on behalf of the Marmon Employees' Retirement Plan, alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1109 and 1132, by Marmon Holdings, Inc. ("Marmon"), its Board of Directors (the "Board"), its Retirement Administrative Committee (the "Committee") and additional unnamed Defendants ("John Does 1-30") (collectively,

---

[1] The Amended Complaint defines the putative class as "All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time between August 16, 2016 through the date of judgment (the "Class Period")." [18] ¶ 38.

1

"Defendants"). Plaintiffs allege that Defendants breached their fiduciary duty of prudence by allowing the Plan to pay excessive recordkeeping fees and by retaining "poorly performing" retirement funds. [18] ¶¶ 93, 99–105. The operative complaint (the "Amended Complaint") also alleges that Marmon and the Board breached their duty to monitor the Committee. *Id.* ¶¶ 106–112. Defendants move to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). [19]. For the reasons set forth below, the Court grants Defendants' motion.

## I. Background[2]

### A. Factual Background

Marmon is an industrial conglomerate of over 100 manufacturing and services businesses. [18] ¶ 27. Marmon sponsors the Marmon Employees' Retirement Plan ("Plan"), a defined-contribution plan in which eligible employees may make tax-advantaged contributions, and Marmon may match a percentage of those contributions and/or provide additional discretionary contributions. *Id.* ¶¶ 45, 47–48.

The Plan consists of a suite of target date funds ("TDFs") and non-target date funds, both of which Plaintiffs allege were created by Defendants, in lieu of selecting commercially available funds. *Id.* ¶¶ 93–94, 97. The current TDF suite "had an inception date of August 7, 2017 which is the same date the funds became available in the Plan." *Id.* ¶ 94 n.16. Plaintiffs note that, due to the suite's inception date, no

---

[2] For purposes of the motion to dismiss, the Court draws the facts from the Amended Complaint, [18].

performance data was available for the years 2017 through 2019 at the time of filing. *Id.* ¶ 94 n.17.

Plaintiffs assert that Marmon is a named fiduciary of the Plan, and, acting through the Board, appointed the Committee to "ensure that the investments available to the Plan's participants are appropriate, had no more expense than reasonable and performed well as compared to their peers." *Id.* at ¶ 31.

Plaintiffs state that "all national recordkeepers for large plans with substantial bargaining power (like the Plan)" provide two categories of essential recordkeeping services: "bundled" services and "a la carte" services. *Id.* ¶¶ 62–66. "Bundled" services are provided for a single negotiated price and may include a blend of recordkeeping, transaction processing, participant communications, plan consulting, document services, accounting and audit services, and compliance, among others. *Id.* ¶¶ 64–65. In contrast, "a la carte" services often accrue "separate, additional fees based on the conduct of individual participants and the usage of the services by individual participants." *Id.* ¶ 66. These services may include loan processing, brokerage services or account maintenance, or distribution services, among others. *Id.* ¶ 66. Plaintiffs allege that *all* these recordkeeping services can be provided by national recordkeepers at "very little cost to all large defined contribution plans" and that for plans with more than 5,000 participants, any variations in the blend or manner that recordkeeping services are rendered has "no material impact on the fees charged by recordkeepers to deliver those services." *Id.* ¶¶ 67–68. Plaintiffs allege that the Plan, at all relevant times, had at least 10,000 participants and at least $870

3

million in assets under management. *Id.* ¶ 10. As a result, Plaintiffs contend, the Plan fell within the top 0.2% of all 401(k) plans by plan size in the United States. *Id.* ¶ 11.

Plaintiffs allege that Mass Mutual acted as the primary recordkeeper, providing recordkeeping services "in line with the routine bundled and A La Carte service categories" throughout the Class Period. *Id.* ¶¶ 69–70, 87. Moreover, Plaintiffs note that these "funds were maintained and monitored with the assistance of Mercer Consulting who received at least $186,535 during 2020." *Id.* ¶¶ 18–24.

### B.  Procedural Background

On August 16, 2022, Plaintiffs sued Defendants. [1]. On October 17, 2022, Defendants moved to dismiss for failure to state a claim, prompting Plaintiffs to file an amended complaint on November 7, 2022. *See* [14], [18]. In the Amended Complaint, Plaintiffs allege that Defendants breached their fiduciary duty of prudence imposed by ERISA § 404(a), 29 U.S.C. § 1104(a) by subjecting Plan participants to excessive recordkeeping and administrative fees and by creating a suite of custom retirement funds that underperformed other commercially available alternatives. [18] ¶¶ 99–105. Plaintiffs also allege that Marmon and the Board failed to monitor the Plan's other fiduciary, the Committee. *Id.* ¶¶ 106–12. Defendants move to dismiss both claims under Rule 12(b)(6). [19].

## II.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "the complaint must provide enough factual information to state a claim to relief that is plausible on its face and

4

raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and draw all reasonable inferences in the plaintiff's favor." *Lax v. Mayorkas,* 20 F.4th 1178, 1181 (7th Cir. 2021). But the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). While "detailed factual allegations" are not necessary to survive a motion to dismiss, the standard "does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). In putative ERISA class actions, "Rule 12(b)(6) motions are an important mechanism for weeding out meritless claims. Courts apply a careful, context-sensitive scrutiny of a complaint's allegations to divide the plausible sheep from the meritless goats." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 577 (7th Cir. 2022). Because ERISA fiduciaries may face circumstances

5

that "will implicate difficult tradeoffs," courts should appreciate "the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Id.*

### III. Analysis

Defendants move to dismiss both counts of the Amended Complaint; the Court examines each in turn.

#### A. Count I (Breach of Duty of Prudence)

In Count One, Plaintiffs allege that Defendants breached their duty of prudence. To state a claim for breach of fiduciary duty under ERISA, the plaintiff must plead: (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff. *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016). For purposes of the motion to dismiss, Defendants do not dispute their status as Plan fiduciaries under ERISA.

ERISA requires fiduciaries to discharge their duties "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters" would use. § 1104(a)(1); *see also Tibble v. Edison Int'l*, 575 U.S. 523, 528 (2015). An ERISA fiduciary's duty is "derived from the common law of trusts," and in determining the contours of the duty, courts thus refer to the law of trusts. *Tibble*, 575 U.S. at 528–29. As relevant here, ERISA fiduciary duties include the duty to exercise prudence in selecting investments, the continuing duty to monitor investments and remove imprudent ones, and the duty to "incur only costs that are reasonable in amount and appropriate to the investment responsibilities." *Hughes v.*

6

*Nw. Univ.*, 63 F.4th 615, 627 (7th Cir. 2023) ("*Hughes II*"); *Tibble*, 575 U.S. at 529. To plead a breach of the duty of prudence under ERISA, a plaintiff must plausibly allege fiduciary decisions outside a range of reasonableness. *See Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022) ("*Hughes I*").

### 1. *Recordkeeping and Administrative Fees*

Plaintiffs first allege that Defendants breached their fiduciary duty by causing the Plan to pay excessive recordkeeping fees. Plaintiffs base this theory, in part, upon the claim that all national recordkeepers could provide the same standard bundled and a la carte services to the Plan, and that minor variations in services delivered are immaterial to cost. [18] ¶¶ 67–68. Thus, prudent fiduciaries do not negotiate fees based upon a percentage of assets, but rather as a fixed dollar amount per participant. *Id.* ¶ 74. This prevents a plan from paying increased fees while the plan assets grow, and the recordkeeping services remain constant. *Id.*

According to Plaintiffs, "the continued use of Mass Mutual without a significant attempt to reduce these fees resulted in a worst-case scenario for the Plan's participants because it saddled the Plan's participants with above-market administrative and recordkeeping fees throughout the Class Period." *Id.* ¶ 75. But according to Plaintiffs' own chart, the Plan's recordkeeping fees decreased every year during the Class Period from 2016 to 2020. *Id.* ¶ 76. The number of participants increased by 35% during that time, but the price per participant decreased by more than 50%. *Id.* Notably, *total fees* paid by the Plan decreased by 34% despite an increase in participants. *Id.*

7

Thus, Plaintiffs' claims are not only unfounded, but directly contradicted by the data they cite in their own complaint. The Plan did not pay "the relatively same amount in recordkeeping fees from 2016 to present." *Id.* ¶ 87. And Plaintiffs' claim that "there is little to suggest" Defendants conducted a request for proposal to secure cheaper fees during the Class Period, *id.* ¶ 87, finds no support in the Amended Complaint, considering the Plan's recordkeeping fees decreased year over year. *Id.* ¶ 76. Based upon these facts, the Court cannot reasonably infer that the Plan's continued use of Mass Mutual throughout the Class Period was imprudent, as Plaintiffs would suggest.

Plaintiffs also allege that the Plan's recordkeeping fees were excessive compared to other plans that offered similar services to similar numbers of participants. But Plaintiffs fail to allege any facts regarding the services each of those comparator plans offered or the total fees paid by each plan to its service provider. Plaintiffs even acknowledge in the Amended Complaint that the comparator plans offer different categories of services, as described on their Forms 5500. *Id.* ¶ 78. A review of the Plan's Form 5500 and the Forms 5500 filed by Plaintiffs' first four comparators,[3] shows that none of the comparators reported receiving the same services as Plaintiffs. In fact, Plaintiffs' Form 5500 lists 15 different service codes to

---

[3] The Court may properly consider the Forms 5500 of the Plan and the comparators because Plaintiffs reference and rely upon them in the Amended Complaint. The Court may also take judicial notice of the forms because they are publicly available on the Department of Labor website. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (court may consider "documents that are critical to the complaint and referred to in it"); *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (on motion to dismiss, court may consider "documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice"); *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take judicial notice of government websites.").

describe the services provided by Mass Mutual. In contrast, the four comparator plans list between three and five service codes.

Plaintiffs also fail to allege what services the Plan actually provided to participants. While Plaintiffs claim the Plan provided the same general "bundled" services that all plans provide, they fail to state whether the Plan also contracted for any of the "a la carte" services offered by recordkeepers. Finally, Plaintiffs acknowledge, and the Forms 5500 confirm, that the Plan and certain comparator plans received some form of indirect compensation not reported on Form 5500. *Id.*

As a result of these deficiencies, Plaintiffs' allegations fail to show that the Plan's recordkeeping fees were excessive for the types and quality of services offered. Thus, the Amended Complaint falls far short of the pleading standard outlined by the Seventh Circuit in *Hughes II*. 63 F.4th at 629–30; *see also Divane v. Nw. Univ.*, 953 F.3d 980, 983 (7th Cir. 2020). In short, Plaintiffs here have failed to elaborate beyond threadbare conclusions couched as factual allegations. *See Twombly*, 550 U.S. at 555.

Plaintiffs fail to state a claim for breach of fiduciary duty of prudence based upon excessive recordkeeping fees.

        2. *Investment Returns*

Plaintiffs also allege that the TDFs and non-target date funds "severely lagged in performance as compared to readily available target date suites," and Defendants should have replaced the Plan's funds at the beginning of the Class Period. [18] ¶ 93–94.

9

In fact, given the length of the class period and the nascency of Marmon's TDF funds, Plaintiffs provide total investment return comparisons for 2020 and only for two "properly performing" comparators. *See* [18] ¶ 94. Yet, courts do not "infer imprudence every time a fiduciary retains a fund that fails to turn in best-in-class performance for any specific period." *Coyer v. Univar Sols. USA Inc.*, No. 1:22 CV 0362, 2022 WL 4534791, at *6 (N.D. Ill. Sept. 28, 2022) (citing *Meiners,* 898 F.3d at 823). This is especially true where, as here, Plaintiffs only compare a single year of returns. *See Evans v. Associated Banc-Corp*, No. 21-C-60, 2022 WL 4638092, at *6 (E.D. Wis. Sept. 30, 2022) ("Short term performance is an unreliable indicator of overall performance because it can mask year to year performance and is a poor predictor of future performance."); *Dorman v. Charles Schwab Corp.*, No. 17-cv-00285-CW, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (even three to five years of returns "are still considered relatively short periods of underperformance"); *Patterson v. Morgan Stanley*, No. 16-cv-6568 (RJS), 2019 WL 4934834, at *10 (S.D.N.Y. Oct. 7, 2019) (acknowledging that "consistent, ten-year underperformance may support a duty of prudence claim" but "the underperformance must be substantial").

Further, Plaintiffs fail to provide any support for their contention that the proposed comparators are an appropriate benchmark for the Marmon TDFs. Plaintiffs plead that the two comparators "match the goals of Marmon's investment policies," but they do not plead any additional qualities of the proposed comparator funds to establish a sound basis of comparison, such as investment strategy,

10

management style, or risk profile. *See* [18] ¶ 96. Simply pleading that the comparator funds "match the goals" of Marmon's funds, *id.*, without providing any additional factual support remains insufficient to establish the comparators as a "meaningful benchmark." *See Meiners,* 898 F.3d at 822 ("The fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether" a plan's target-date funds "were an imprudent choice at the outset."). Without more, Plaintiffs' allegations do not create the reasonable inference that their proposed comparators are sufficiently similar to the Marmon TDFs. *See id.*

The basis for comparison with non-target date funds remains even less robust. Plaintiffs assert that the comparators are "peers," but they provide no further points of comparison. *Id.* ¶ 98. The only points of comparison the Court can glean from the chart are that, based upon the fund names, the "Marmon Int'l Stock" fund is compared to other international funds and the "Marmon SMID" fund is compared to other small- and mid-cap funds. *Id.* ¶ 97.

Without a "meaningful benchmark" to guide the Court's inference, Plaintiffs' claim based upon investment returns fails. *See Meiners,* 898 F.3d at 822.

**B.      Count II (Breach of Duty to Monitor)**

Plaintiffs also allege that Marmon and the Board failed to monitor the Committee. [18] ¶¶ 106–12. As in *Albert*, Plaintiffs' failure to monitor claim must "rise or fall" with their duty of prudence claims, 47 F.4th at 583, and their failure to state a claim for breach of fiduciary duty dooms their failure to monitor claim as well. *See id.; see also Rogers v. Baxter Int'l Inc.*, 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010)

(finding that a failure to monitor claim is "derivative in nature and must be premised" on "an underlying breach of fiduciary duty"); *Mazza v. Pactiv Evergreen Servs. Inc.*, No. 22 C 5052, 2023 WL 3558156, at *4 (N.D. Ill. May 18, 2023) (denying dismissal of failure to monitor claim because plaintiff "sufficiently pleaded his breach of the duty of prudence claim").[4]

### C. Class Action Waiver

Defendants also argue that a Plan amendment containing a class action waiver precludes Plaintiffs from proceeding on a class basis. [20] at 14–15. In light of the rulings above, the Court need not reach this issue.

## IV. Conclusion

For the reasons explained above, the Court grants Defendants' motion to dismiss [19] and dismisses the Amended Complaint. The dismissal is without prejudice, however, and Plaintiffs may file an amended complaint within 21 days of this order, if they can, in good faith and consistent with Rule 11, set forth factual allegations to cure the deficiencies discussed above. If Plaintiffs fail to file an amended complaint by this date, the Court will dismiss this case.

Dated: September 22, 2023

Entered:

_____
John Robert Blakey
United States District Judge

---

[4] Plaintiffs effectively concede that their duty to monitor claim cannot proceed if their underlying breach of fiduciary duty claim fails. [23] at 14.

12