**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JENNIFER R. LARD, JOHN G. JUERGENS, GERALD L. ROBINSON, SCOTT W. ANDERSON, THOMAS A. PITERA, SHARON BRADLEY-SMITH and TORANZ J. PLUMMER, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 1:22-cv-4332 |
| v. | Honorable Jeffrey I. Cummings |
| MARMON HOLDINGS, INC., THE BOARD OF DIRECTORS OF MARMON HOLDINGS, INC., MARMON RETIREMENT ADMINISTRATIVE COMMITTEE, and JOHN DOES 1-30, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 1

LEGAL STANDARD .......................................................................................... 4

ARGUMENT ...................................................................................................... 5

I.      Plaintiffs Fail To State A Prudence Claim ............................................... 5

      A.      Plaintiffs Have Not Pleaded Meaningful Underperformance Relative To A Meaningful Benchmark. .............................................................. 6

      B.      Plaintiffs Have Not Pleaded Any Other Indicia Of Imprudence. ....................... 12

II.      Plaintiffs Fail To State A Monitoring Claim. ................................................... 14

III.      Plaintiffs Cannot Bring A Class Or Representative Action. ............................................... 15

CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) ...............................................................5, 14

*Anderson v. Intel Corp. Inv. Policy Comm.*,
579 F. Supp. 3d 1133 (N.D. Cal. 2022) ......................................5, 8, 9, 10, 11, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................4

*Coyer v. Univar Sols. USA Inc.*,
2022 WL 4534791 (N.D. Ill. Sept. 28, 2022) ...........................................7

*Davis v. Wash. U. in St. Louis*,
960 F3d 478 (8th Cir. 2020) ................................................................9

*Dorman v. Charles Schwab Corp.*,
2019 WL 580785 (N.D. Cal. Feb. 8, 2019) ...........................................8

*Dorman v. Charles Schwab Corp.*,
780 F. App'x 510 (9th Cir. 2019) ........................................................15

*Evans v. Associated Banc-Corp*,
2022 WL 4638092 (E.D. Wis. Sept. 30, 2022)......................................5, 7, 8, 10, 11

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)..............................................................................4

*Forman v. TriHealth, Inc.*,
563 F. Supp. 3d 753 (S.D. Ohio 2021), *aff'd in relevant part*, 40 F.4th 443
(6th Cir. 2022)..................................................................................6, 7

*Hall v. Capital One Fin. Corp.*,
2023 WL 2333304 (E.D. Va. Mar. 1, 2023) ...........................................5, 9, 11, 12

*Hughes v. Nw. Univ.*,
142 S. Ct. 737 (2022)...........................................................................4

*Hughes v. Nw. Univ.*,
63 F.4th 615 (7th Cir. 2023) ...............................................................4

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Jenkins v. Yager*,
    444 F.3d 916 (7th Cir. 2006) ............................................................6, 7

*Luckett v. Wintrust Fin. Corp.*,
    2023 WL 4549620 (N.D. Ill. Jul. 14, 2023)......................................5, 6, 9

*Matousek v. MidAmerican Energy Co.*,
    51 F.4th 274 (8th Cir. 2022) ....................................................5, 9, 11, 12

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) ...........................................................6

*Niiranen v. Carrier One, Inc.*,
    2022 WL 103722 (N.D. Ill. Jan. 11, 2022) ..............................................15

*In re Nokia ERISA Litig.*,
    2011 WL 7310321 (S.D.N.Y. Sept. 6, 2011)...........................................14

*Patterson v. Morgan Stanley*,
    2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ...............................6, 7, 8, 13

*Perkins v. United Surgical Partners Int'l Inc.*,
    2022 WL 824839 (N.D. Tex. Mar. 18, 2022) ..........................................14

*Riley v. Olin Corp.*,
    2023 WL 371872 (E.D. Mo. Jan. 24, 2023) ...................................8, 10, 12

*Russell v. Mass. Mut. Life Ins. Co.*,
    473 U.S. 134 (1985).....................................................................15

*Smith v. Bd. of Directors of Triad Mfg., Inc.*,
    13 F.4th 613 (7th Cir. 2021) .............................................................15

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) .......................................................7, 12

*Struve v. Electrolux Home Prods., Inc.*,
    2019 WL 918503 (N.D. Ill. Feb. 25, 2019) ............................................14

*Wehner v. Genentech, Inc.*,
    2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ...................................9, 11, 12, 13, 14

*Wildman v. Am. Century Servs., LLC*,
    362 F. Supp. 3d 685 (W.D. Mo. 2019) ..................................................13

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Other Authorities**

29 C.F.R. § 2509.75–8 ................................................................................................14

29 U.S.C. § 1104(a)(1)(B) ...........................................................................................5

U.S. Dep't of Labor, Employee Benefits Security Admin., *Target Date
    Retirement Funds—Tips for ERISA Plan Fiduciaries* at 3 (Feb. 2013),
    https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-
    activities/resource-center/fact-sheets/target-date-retirement-funds.pdf..................................13

**TABLE OF EXHIBITS**

**EXHIBIT**                              **DESCRIPTION**

Exhibit A                    Marmon Employees' Retirement Plan and Marmon
                             Consolidated Retirement Plan, Statement of Investment
                             Policy, Aug. 24, 2020

Exhibit B                    Tenth Restatement of the Marmon Employees'
                             Retirement Plan (as Amended and Restated Effective as
                             of January 1, 2016) and Eighth Amendment Thereto

## INTRODUCTION

This lawsuit, one of scores of copycat actions by the same law firm, alleges that Marmon Holdings, Inc. ("Marmon"), its Board of Directors, and its Retirement Administrative Committee (the "Committee") breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"). The allegations here are right out of the standard playbook. Plaintiffs assert that fiduciaries of the Marmon Employees' Retirement Plan (the "Plan") picked and kept imprudent investment options that, over a short period, supposedly performed worse than purportedly similar investments that, in hindsight, turned out to have strong returns. Courts in this Circuit and many others have repeatedly dismissed these kinds of generic claims because ERISA does not make such underperformance actionable. That is why Judge Blakey dismissed the prior iteration of Plaintiffs' underperformance claims. Doc. 42 at 9-12 ("MTD Order").

Now Plaintiffs are back with a Second Amended Complaint (Doc. 46, "Compl."), trying for a third time to plead such a claim. The new Complaint adds more purported comparators and changes the alleged year of underperformance. But the Complaint still does not show meaningful underperformance, over a meaningful period, against meaningful comparators. Nor does it allege any other indicia of imprudence. If anything, the Complaint refutes imprudence by revealing that the supposedly underperforming funds actually *outperformed* many of Plaintiffs' cherry-picked comparators in three of the five years at issue. In short, the third time definitely is not a charm for Plaintiffs. Their Complaint should again be dismissed, this time with prejudice.

## BACKGROUND

Marmon is a holding company for more than 100 manufacturing and services businesses in 11 industry groups. Compl. ¶ 27. It sponsors the Plan, a defined-contribution retirement plan that Plaintiffs allege had 13,667 participants and $1.1 billion in assets at year-end 2020. *Id.* ¶¶ 10,

27, 39, 45, 55. Under the Plan, each eligible employee can make tax-advantaged contributions to an individual investment account from the employee's pay. *Id.* ¶¶ 45-48. In addition, Marmon makes matching contributions, as well as discretionary retirement contributions, to those individual accounts. *Id.* ¶¶ 47-48. Each Plan participant chooses how to invest the money in the participant's account by selecting from a diversified menu of investment options. *Id.* ¶ 54.

The Committee, acting as a fiduciary under ERISA, administers the Plan. *Id.* ¶ 34. Its tasks include selecting and evaluating investment options available to Plan participants. *Id.* As relevant here, the Committee added certain "target date funds" as investment options in August 2017 and added more such funds in April 2019. *Id.* ¶ 98. The Complaint refers to those custom, Marmon-specific, target date funds as the Marmon Target Retirement Series ("Marmon TDFs"). *Id.*

A "target date fund" or "TDF" is an investment vehicle that holds a portfolio of diversified assets chosen and adjusted over time based on a target retirement date. *Id.* ¶¶ 67, 70-71. For example, an investor who expects to retire in about 30 years can select a "2055" fund that will initially invest mainly in riskier securities, like stocks, and gradually transition into less risky investments, like bonds, as 2055 (the "target date") approaches. *Id.* ¶¶ 71-73. Target date funds are standard offerings in retirement plans. *Id.* ¶¶ 68, 86. And sponsors have a wide array of options to choose from. *Id.* ¶¶ 68-69, 85-86. Even among funds with the same target dates, there can be substantial differences in investment strategies, asset allocations, portfolio holdings, and other important factors bearing on risk of loss and potential returns. *Id.* ¶¶ 70-77.

The Complaint acknowledges some of those factors. Different funds adopt different "glide paths," which dictate how a fund's asset allocations change to become more conservative as the target date nears. *Id.* ¶¶ 72-73. For instance, some TDFs are "to" funds designed to reach their most conservative allocation at the target date, while others (like the Marmon TDFs) are "through"

2

funds designed to reach that allocation after the target date. *Id.* ¶¶ 74-75. TDFs also can be actively managed to beat benchmark returns, or passively managed to replicate such returns. *Id.* ¶ 77.

Plaintiffs—former Marmon employees who participated in the Plan (*id.* ¶¶ 18-24)—assert two ERISA claims in this case. In Count I, they allege that the Committee breached a fiduciary duty of prudence by making the Marmon TDFs available to Plan participants. *Id.* ¶¶ 104-11. In Count II, they assert that Marmon and its Board of Directors failed to adequately monitor the Committee and prevent or rectify its purported breach of fiduciary duty. *Id.* ¶¶ 111-17. In support of those claims, Plaintiffs allege that the Marmon TDFs lacked any performance history before being added to the Plan, and then underperformed six "Comparator Funds" and three "Comparator Indexes" in 2018. *Id.* ¶¶ 91-103, 107. But the Complaint fails to allege any meaningful underperformance against meaningful comparators, or any other indicia of imprudence.

This failure to plead a viable ERISA claim comes on the heels of the dismissal of Plaintiffs' prior, already once amended, complaint. That complaint, too, alleged inadequate performance history and subsequent underperformance for the Marmon TDFs, as well as now-abandoned challenges to recordkeeping fees and the performance of other Plan investment options. In dismissing the TDF underperformance claims, the MTD Order explained that "courts do not 'infer imprudence every time a fiduciary retains a fund that fails to turn in best-in-class performance for any specific period.'" Doc. 42 at 10. That is "especially true," the MTD Order continued, "where, as here, Plaintiffs only compare a single year of returns." *Id.* The MTD Order also faulted Plaintiffs for "fail[ing] to provide any support for their contention that the proposed comparators" were "an appropriate benchmark for the Marmon TDFs." *Id.* In particular, the MTD Order observed that Plaintiffs did not plead the "qualities of the proposed comparator funds" that might "establish a sound basis of comparison, such as investment strategy, management style, or risk profile." *Id.* at

10-11. Plaintiffs' prudence claim "based upon investment returns" therefore "fail[ed]." *Id.* at 11. And the failure of that claim "doom[ed] their failure to monitor claim as well," because monitoring claims "rise or fall" with the underlying prudence claim. *Id.* at 11-12.

Plaintiffs' effort to supplement their deficient prior allegations regarding the Marmon TDFs only confirm the wisdom of the MTD Order. Plaintiffs do not and cannot plausibly allege that selection or retention of the Marmon TDFs was imprudent under ERISA.

## LEGAL STANDARD

A complaint must allege a "plausible entitlement to relief" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). This requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court must take well-pled allegations as true and make reasonable inferences in a plaintiff's favor, it need not credit a complaint's mere "labels and conclusions." *Twombly*, 550 U.S. at 555. Further, in ERISA fiduciary-duty cases, the "appropriate inquiry" at the pleading stage "will necessarily be context specific," requiring "due regard" for "the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022). A plaintiff thus must "plausibly allege fiduciary decisions outside a range of reasonableness." *Hughes v. Nw. Univ.*, 63 F.4th 615, 630 (7th Cir. 2023). And strict enforcement of that requirement is essential because motions to dismiss are an "important mechanism for weeding out meritless claims" in ERISA suits. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

## ARGUMENT

### I.     Plaintiffs Fail To State A Prudence Claim.

The third iteration of Plaintiffs' complaint still fails to state an ERISA claim for breach of the Committee's fiduciary duty to act prudently in selecting and retaining Plan investment options.

The duty of prudence imposed by ERISA requires retirement-plan fiduciaries to discharge their obligations "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Crucially, that standard looks to the process, rather than the outcome, of fiduciary decision-making. *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022) ("the ultimate outcome of an investment is not proof of imprudence"); *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022) ("The process is what ultimately matters, not the results."). Accordingly, a prudence challenge to the selection or retention of investment options cannot proceed without plausible factual allegations directly or circumstantially pleading a defective selection or retention process. *Hall v. Capital One Fin. Corp.*, 2023 WL 2333304, at *4 (E.D. Va. Mar. 1, 2023); *Evans v. Associated Banc-Corp*, 2022 WL 4638092, at *5 (E.D. Wis. Sept. 30, 2022). Mere underperformance, therefore, is not actionable. *Luckett v. Wintrust Fin. Corp.*, 2023 WL 4549620, at *3 (N.D. Ill. Jul. 14, 2023); *Evans*, 2022 WL 4638092, at *5. There must be other indicia of imprudence. *Evans*, 2022 WL 4638092, at *5; *Anderson v. Intel Corp. Inv. Policy Comm.*, 579 F. Supp. 3d 1133, 1147 (N.D. Cal. 2022).

The Complaint is miles away from pleading a prudence claim. It does not even allege meaningful underperformance by the Marmon TDFs, let alone other indicia of imprudence. Count I of the Complaint should be dismissed with prejudice.

## A. Plaintiffs Have Not Pleaded Meaningful Underperformance Relative To A Meaningful Benchmark.

Under established ERISA case law, the pleaded facts simply do not support Plaintiffs' conclusory allegations that the Marmon TDFs "chronically," "consistently," "materially," and "severe[ly]" underperformed "comparable investments." Compl. pp. 19, 24 & ¶¶ 91, 99, 100, 102, 103, 107. If anything, the pleaded facts refute those allegations.

**No Meaningful Underperformance.** To start, Plaintiffs fail to show that the Marmon TDFs meaningfully underperformed Plaintiffs' "Comparator Funds" and "Comparator Indexes."

As the MTD Order observed, "courts do not 'infer imprudence every time a fiduciary retains a fund that fails to turn in best-in-class performance for any specific period.'" Doc. 42 at 10 (quoting *Coyer v. Univar Sols. USA Inc.*, 2022 WL 4534791, at *6 (N.D. Ill. Sept. 28, 2022)); *see also Luckett*, 2023 WL 4549620, at *4 (same); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) ("No authority requires a fiduciary to pick the best performing fund."). Underperforming supposedly comparable funds that plaintiffs' counsel cherry-picked in hindsight for their strong returns is no indicia of imprudence. *Meiners*, 898 F.3d at 823 (the fact that one TDF outperformed another "does not establish anything about whether the underperforming TDF was "an imprudent choice at the outset"); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *10-12 (S.D.N.Y. Oct. 7, 2019) (rejecting "impermissibly hindsight-based" analysis of performance).

Likewise, underperforming benchmarks by just one or two percent is "not sufficient to create a plausible inference of imprudence." *Forman v. TriHealth, Inc.*, 563 F. Supp. 3d 753, 763 (S.D. Ohio 2021), *aff'd in relevant part*, 40 F.4th 443 (6th Cir. 2022); *see also Patterson*, 2019 WL 4934834, at *10 ("underperformance must be substantial"). And, as the MTD Order recognized, underperformance must be sustained over many years before it suggests imprudence. Doc. 42 at 10; *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006) (nothing imprudent in staying

6

with long-term growth investments "even during years of lower performance"); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) (five years of underperformance not enough); *Evans*, 2022 WL 4638092, at *6 (same). Indeed, chasing a given year's top performers is affirmatively *imprudent*. *Smith*, 37 F.4th at 1166 ("Precipitously selling a well-constructed portfolio in response to disappointing short-term losses . . . is one of the surest ways to frustrate long-term growth of a retirement plan.").

Under these established standards, Plaintiffs come nowhere close to pleading actionable underperformance. The Complaint focuses on purported underperformance in 2018 as supposedly shown in a bar graph reflecting that year's returns for four Marmon TDFs, the Comparator Funds, and the Comparator Indexes. Compl. ¶ 99. That graph and the related averments are exactly the kind of allegations that courts have repeatedly rejected as indicia of imprudence.

To begin, a simple examination of the bar graph shows that, for each target date, the Marmon TDFs underperformed the Comparator Indexes and several Comparator Funds by less than two percent. *Id.* That alone warrants dismissal. *Forman*, 563 F. Supp. 3d at 763; *Patterson*, 2019 WL 4934834, at *10. And to the extent the Marmon TDFs underperformed certain Comparator Funds by more than two percent, the graph shows that those Comparator Funds substantially outperformed the Comparator Indexes, suggesting they are cherry-picked top performers that the Marmon TDFs are not required to match. *Coyer*, 2022 WL 4534791, at *6.

In addition, Plaintiffs *again* base their claims on a single year of purported underperformance. The MTD Order rejected that approach, dismissing the prior version of Plaintiffs' underperformance claim precisely because "compar[ing] a single year of returns" is insufficient. Doc. 42 at 10. And other decisions have repeatedly held that such short-term underperformance suggests no imprudence. *Jenkins*, 444 F.3d at 926; *Smith*, 37 F.4th at 1166;

*Evans*, 2022 WL 4638092, at *6. Yet Plaintiffs stick with that "insufficient" approach, relying on purported underperformance in 2018 alone.

To be sure, Plaintiffs include bar graphs for 2019, 2020, 2021, and 2022 in Complaint Appendix B. But they make no allegations about underperformance in those years. Nor do they provide cumulative performance metrics across the entire 2018-2022 period. That is not surprising. In 2019, the Marmon TDFs all had double-digit percent gains, earning returns on par with or just a percent or two below most of the Comparator Funds and Comparator Indexes. App'x B at 1. Then, in 2020, 2021, and 2022, each Marmon TDF outperformed many of Plaintiffs' comparators. *Id.* at 2-4. For example, the Marmon 2045 TDF outperformed two Comparator Funds and two Comparator Indexes in 2020 and three Comparator Funds and all three Comparator Indexes in both 2021 and 2022. *Id.* Such *overperformance* requires dismissal of an underperformance claim. *Riley v. Olin Corp.*, 2023 WL 371872, at *5 (E.D. Mo. Jan. 24, 2023) (dismissing where allegedly underperforming funds outperformed benchmark index and comparator funds in certain years); *Anderson*, 579 F. Supp. 3d at 1152-53 (similar); *Patterson*, 2019 WL 4934834, at *10 (similar); *Dorman v. Charles Schwab Corp.*, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (similar).[1]

In short, Plaintiffs have not pleaded the underperformance required for their prudence claim. Indeed, had the Committee replaced the Marmon TDFs with one of the Comparator Funds after 2018—something Plaintiffs say the Committee should have done (Compl. ¶ 100)—Plan participants easily could have been much worse off. That hardly would have been prudent.

**No Meaningful Benchmark.** Plaintiffs also fail to show that the "Comparator Funds" and "Comparator Indexes" identified in the Complaint are "comparable" to the Marmon TDFs.

---

[1]    That is especially true for the Marmon 2025, 2035, 2045, 2055, and 2065 TDFs, which were not introduced until 2019 or 2020 and thus are not included in Plaintiffs' 2018 and 2019 bar graphs. Compl. ¶¶ 98, 99 & App'x B at 1.

An ERISA plaintiff trying to plead that an investment underperformed "must provide 'a sound basis for comparison—a meaningful benchmark.'" *Luckett*, 2023 WL 4549620, at \*3; *Davis v. Wash. U. in St. Louis*, 960 F3d 478, 484 (8th Cir. 2020). As the MTD Order recognized, a plaintiff thus must allege the "qualities of the proposed comparator[s]," such as "investment strategy," "management style," and "risk profile." Doc. 42 at 10-11; *see also Matousek*, 51 F.4th at 281-82 (dismissing for failure to allege similar details); *Hall*, 2023 WL 2333304, at \*6 (same); *Anderson*, 579 F. Supp. 3d at 1150-51 (same). And the plaintiff must allege that the supposedly underperforming investments share similar qualities. *Matousek*, 51 F.4th at 281; *Hall*, 2023 WL 2333304, at \*6; *Anderson*, 579 F. Supp. 3d at 1150-51. Plaintiffs hardly even try to allege those things. And they certainly do not succeed.

Plaintiffs first point to six cherry-picked "Comparator Funds." Compl. ¶¶ 91-99. Those suites of TDFs managed by six large investment-fund providers are six of roughly 200 TDF suites allegedly placed in a "Lifetime Moderate Index" category by Morningstar, a firm that provides information and ratings regarding various investment vehicles. *Id.* ¶¶ 92-95. According to the Complaint, Morningstar "would place the Marmon Target Retirement Series, had it not been internally created, in the 'Lifetime Moderate Index' category because the underlying holdings of each fund match the risk return profile of this category." *Id.* ¶ 95.

Even if that speculation were credited, Plaintiffs' allegations fall far short of showing that that Comparator Funds could be meaningful benchmarks for the Marmon TDFs. Courts have repeatedly rejected the notion that any TDF with the same target date can serve as a meaningful benchmark. *Luckett*, 2023 WL 4549620, at \*3 (TDFs with different management styles and glide paths were not meaningful benchmarks); *Anderson*, 579 F. Supp. 3d at 1150 ("the argument that all TDFs are meaningful benchmarks cannot survive a motion to dismiss"); *Wehner v. Genentech,*

*Inc.*, 2021 WL 507599, at *8-9 (N.D. Cal. Feb. 9, 2021) (similar). TDFs can have very different strategies, glide paths, and asset allocations. *Anderson*, 579 F. Supp. 3d at 1150-51. Likewise, many decisions hold that simply being in the same Morningstar category as an allegedly imprudent fund does not make a fund a meaningful benchmark. *Riley*, 2023 WL 371872, at *3-6 (comparison of fund qualities, not Morningstar category, controls benchmark analysis); *Evans*, 2022 WL 4638092, at *7 (Morningstar categories too broad to create benchmark status). That is sensible: Morningstar categories are broad and encompass funds with very different investment strategies, management styles, and risk profiles. *Evans*, 2022 WL 4638092, at *7. The Lifetime Moderate Index category, with more than 200 disparate TDFs, is a case in point.

Plaintiffs first try to suggest that the Comparator Funds are especially similar to the Marmon TDFs because some barely explained graphs in Appendix A to the Complaint allegedly show that all the funds concentrate their holdings in the same risk/return category. Compl. ¶ 95 & App'x A. But even a cursory review of the graphs reveals that they do not remotely support the notion that the Comparator Funds are appropriate benchmarks. To begin, the graphs appear to compare only *stock* holdings. But, as the Complaint acknowledges, one of the essential features of TDFs is that they hold a diversified portfolio that includes assets *other than* stocks, such as bonds. *Id.* ¶ 70. Indeed, as TDFs approach their target dates, most of their holdings will shift to bonds or other more conservative investments. *Id.* ¶ 71. Without considering those investments, the graphs do nothing to establish the Comparator Funds as meaningful benchmarks.

Even as purported measures of similarity in stock holdings, the graphs fail to confer benchmark status on the Comparator Funds. Simple eyeballing reveals substantial differences between stock holdings of the Marmon TDFs (in yellow) and the Comparator Funds (in blue). The ovals shown in the graphs are never the same size or in the same place, and often reflect quite

different risk profiles. App'x A. The MFS Lifetime 2045 fund, for instance, has a much larger proportion of mid-cap and value stocks than the Marmon Target 2045 fund. *Id.* at 4. Plus, all of the graphs are as of September 2023 (App'x A), meaning that they say absolutely nothing about how the Comparator Funds might have resembled the Marmon TDFs during the 2018-2022 period of alleged underperformance. Compl. ¶ 99 & App'x B.

In any event, Plaintiffs allege nothing about other crucial qualities of the Comparator Funds. The Complaint does not say whether the Comparator Funds are actively or passively managed. It does not say whether they are "to" or "through" funds. It does not describe their glide paths. And it does not identify their investment strategies or objectives. Courts routinely dismiss prudence claims where a complaint lacks such facts. *Matousek*, 51 F.4th at 281; *Hall*, 2023 WL 2333304, at *6; *Anderson*, 579 F. Supp. 3d at 1150-51. Indeed, the prior iteration of Plaintiffs' prudence claim was dismissed for precisely that reason. Doc. 42 at 10-11. And the MTD Order is not alone in dismissing an underperformance claim directed at custom TDFs where the complaint failed to plead crucial details about proposed off-the-shelf TDF comparators. *Wehner*, 2021 WL 507599, at *8-9 (conclusory allegations of "some similarity" did not save complaint from dismissal given the "'well-known differences' between custom and retail TDFs").

Plaintiffs fare no better with their Comparator Indexes. One ("OE Benchmark") reflects the performance of all 200+ funds in the Lifetime Moderate Index category. Compl. ¶ 100. Another (OE Peer Group Median) reflects the median performance of all funds in that category. *Id.* And a third (SA Peer Group Median) reflects the median performance of separate-account funds in that category. *Id.* Using any of the Comparator Indexes as a benchmark would require the Court to ignore that funds in the same "peer group" can have very different characteristics, such as use of an active or passive management strategy, that can produce very different returns. *Anderson*, 579

11

F. Supp. 3d at 1150; *Wehner*, 2021 WL 507599, at *8. That fact has led many courts to dismiss prudence claims based on comparisons to peer groups, indices, averages, and medians. *Matousek*, 51 F.4th at 281-82; *Riley*, 2023 WL 371872, at *4; *Hall*, 2023 WL 2333304, at *6. Indeed, one court dismissed a TDF underperformance claim after concluding that "Morningstar 'peer group categories' are inappropriate benchmarks … because [they] are an average of a large group of funds" that "could all have differing aims, risks, and rewards." *Anderson*, 579 F. Supp. 3d at 1150-51. Plaintiffs allege no facts suggesting a different conclusion applies here; if anything, the graphs in Appendix A confirm that the Lifetime Moderate Index category (in red) includes many funds with risk profiles quite different from the Marmon TDFs (in yellow).

Having failed to identify a meaningful benchmark for the Marmon TDFs, Plaintiffs cannot state a prudence claim based on underperformance by those funds. "Comparing apples and oranges is not a way to show that one is better or worse than the other." *Smith*, 37 F.4th at 1166.

### B.     Plaintiffs Have Not Pleaded Any Other Indicia Of Imprudence.

Even if Plaintiffs had pleaded meaningful underperformance against a meaningful benchmark, their prudence claim would still warrant dismissal because the Complaint does not plead any other indicia of imprudence. *Anderson*, 579 F. Supp. 3d at 1147. All the Complaint offers on that score is a few conclusory allegations that, in adding the Marmon TDFs to the Plan, the Committee improperly selected new, custom TDFs rather than existing, off-the-shelf TDFs. Compl. ¶¶ 76, 98, 100, 103. But, as a matter of law, there is nothing improper about that choice.

Custom TDFs certainly are not off-limits to ERISA plans. Plaintiffs may think it "inexplicable" that the Plan offers such funds instead of "off-the-shelf" alternatives available in the market. *Id.* ¶ 76. But the agency charged with administering ERISA expressly *encourages* fiduciaries to consider "custom" target date fund options. The Department of Labor advises

fiduciaries that it is important to "ask your investment provider" about custom funds and "[i]nquire about whether a custom or non-proprietary target date fund would be a better fit for your plan." U.S. Dep't of Labor, Employee Benefits Security Admin., *Target Date Retirement Funds—Tips for ERISA Plan Fiduciaries* at 3 (Feb. 2013), https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/fact-sheets/target-date-retirement-funds.pdf. Custom funds offer many potential advantages, including the ability to structure a TDF to incorporate a plan's other fund options and to diversify exposures to investment providers. *Id.* Also, "a custom strategy can be designed to the specific needs of a specific plan's demographics based on factors such as pay levels, expected retirement ages, contribution levels, or other sources of retirement income." *Wehner*, 2021 WL 507599, at *8. Far from being "inexplicable," it is quite reasonable for a plan fiduciary to forgo a generic, one-size-fits-all TDF suite in favor of something designed to better suit the needs of plan participants. *Id.* at *6-7 (rejecting prudence challenge to custom TDFs).

It is also perfectly appropriate to add new funds without performance histories to a plan. Plaintiffs again call the Committee's decision to do so with the Marmon TDFs "inexplicable." Compl. ¶ 98. But courts have not hesitated to reject prudence claims based on a fund's lack of performance history. *Patterson*, 2019 WL 4934834, at *14 ("That [a TDF] was untested is also insufficient to establish imprudence in the selection and retention of the fund."); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 705 (W.D. Mo. 2019) (noting absence of "authority holding that the implementation of a fund without a long performance history is per se imprudent"). That makes sense. New investment vehicles for retirement savings (custom or otherwise) could not launch if plan fiduciaries could not add them to plans. And plan fiduciaries have many other ways to evaluate new investments. They can review the past performance of both the fund manager and the investment's underlying holdings. They also can monitor performance going forward.

Plaintiffs also try to suggest that Marmon's Investment Policy Statement ("IPS") required the Marmon TDFs to have a performance history before being added to the Plan. Compl. ¶ 98. Not so. The forward-looking sentence quoted in the Complaint—"Fund specific performance will be evaluated over trailing 3-year and 5-year periods on a net of fee basis"—addresses how funds already selected for the Plan will be evaluated. Ex. A at 7 (IPS). Tellingly, the sentence appears in the IPS section describing the benchmark indices for the Plan's existing investment funds. *Id.* The sentence simply does not speak to the selection of funds. It therefore does not save Plaintiffs' prudence claim from dismissal. *Wehner*, 2021 WL 507599, at *9 (rejecting similar IPS argument).

## II.     Plaintiffs Fail To State A Monitoring Claim.

Plaintiffs' remaining claim alleges that Marmon and its Board breached a duty to monitor the Committee. Compl. ¶¶ 111-17. The duty to monitor is derivative, so this Count II fails because Plaintiffs do not plead an underlying breach. *See Albert*, 47 F.4th at 583; Doc. 42 at 11-12 (MTD Order). In addition, fiduciaries need only monitor their appointees "in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards." 29 C.F.R. § 2509.75–8 at FR-17. Pleading a breach of this limited duty requires a "specific factual basis." *In re Nokia ERISA Litig.*, 2011 WL 7310321, at *5 (S.D.N.Y. Sept. 6, 2011); *see also Struve v. Electrolux Home Prods., Inc.*, 2019 WL 918503, at *4 (N.D. Ill. Feb. 25, 2019) ("conclusory allegations that Defendants failed adequately to monitor Prudential are insufficient"). Specific allegations are entirely missing here. Finally, even if Plaintiffs had alleged a monitoring claim, the Court should dismiss the Board. It is "duplicative" to maintain a claim against the board of directors when the company is named directly. *Perkins v. United Surgical Partners Int'l Inc.*, 2022 WL 824839, at *7 (N.D. Tex. Mar. 18, 2022).

### III.    Plaintiffs Cannot Bring A Class Or Representative Action.

Even if Plaintiffs had stated a claim—and they have not—they cannot bring any class or representative claims on behalf of other Plan participants. *See* Compl. ¶ 38 & p. 14 n.7 (seeking to pursue such litigation). The operative written Plan expressly provides that "[a]ny dispute, claim, action or suit relating to or arising under the Plan shall proceed solely on an *individual basis* without the right for any claims to be litigated on a class or collective action basis or on a basis involving claims brought in a purported representative capacity on behalf of others or any governmental body or the public." Ex. B, Eighth Amend. (emphasis added).

The Seventh Circuit has explained that there is no "problem" with a plan provision that "funnels its participants away from class actions." *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 622 (7th Cir. 2021); *see also Niiranen v. Carrier One, Inc.*, 2022 WL 103722, at *8 (N.D. Ill. Jan. 11, 2022) (enforcing contractual class waiver). And the Seventh Circuit has rejected the idea that ERISA allows for representative claims on behalf of a defined-contribution plan or its participants, as those claims (unlike claims involving a defined-benefit plan) are necessarily individualized. *Smith*, 13 F.4th at 622 n.6 (distinguishing dicta regarding representative actions in *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985), as being limited to the defined-benefit context); *accord Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019) ("Although § 502(a)(2) claims seek relief on behalf of a plan, the Supreme Court has recognized that such claims are inherently individualized when brought in the context of a defined contribution plan like that at issue."). If any claim proceeds, the Court should rule that it may not proceed as a class or representative action.

### CONCLUSION

For the foregoing reasons, the Court should dismiss this case with prejudice.

Dated: November 30, 2023

Respectfully submitted,

/s/ *Nancy G. Ross*
Nancy G. Ross
J. Gregory Deis
Joshua D. Yount
Elaine Liu
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
nross@mayerbrown.com
gdeis@mayerbrown.com
jyount@mayerbrown.com
eliu@mayerbrown.com

*Counsel for Defendants Marmon Holdings,*
*Inc., the Board of Directors of Marmon*
*Holdings, Inc., and the Marmon Retirement*
*Administrative Committee*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2023, I caused a true and correct copy of the foregoing document to be filed electronically. Notice of the filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Dated: November 30, 2023                    By: /s/ *Nancy G. Ross*
                                                        *Attorney for Defendants*

758657360