## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

JENNIFER R. LARD, JOHN G.       )
JUERGENS, GERALD L. ROBINSON,  )
SCOTT W. ANDERSON, THOMAS A.   )
PITERA, SHARON BRADLEY-SMITH   )
and TORANZ J. PLUMMER, individually )
and on behalf of all others similarly situated, )
                                )
                    Plaintiffs,  )
                                )
          v.                   )
                                )
MARMON HOLDINGS, INC., THE     )
BOARD OF DIRECTORS OF MARMON  )
HOLDINGS, INC., MARMON         )
RETIREMENT ADMINISTRATIVE    )
COMMITTEE and JOHN DOES 1-30,   )
                                )
                  Defendants.  )

**CIVIL ACTION NO.: 1:22-cv-4332**

**Honorable Jeffrey I. Cummings**

## PLAINTIFFS' OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

**TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................1

II.    STANDARD OF REVIEW IN ERISA CASES .................................................3

III.   THE SECOND AMENDED COMPLAINTS' ALLEGATIONS .......................4

IV.    ARGUMENT .......................................................................................................7

       A.    The Plan's Target Date Funds Were Imprudent .......................................7

             1.    Plaintiffs allege Meaningful Bencharks to the Marmon TDFs ...................7

             2.    Whether Plaintiffs' Comparators are Meaningful Comparators for the
                   Challenged Plan Funds Is Not Suitable at the Motion to Dismiss Stage .....9

             3.    Plaintiffs' Allegations of Underformance Demonstrated Imprudence ......10

       B.    The SAC Alleges Sufficient Facts to State A Claim for Failure to Monitor .........13

       C.    Plaintiffs can Bring a Class Action and Derivative Action Complaint .................13

       V.    CONCLUSION .................................................................................................15

i

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Allegretti v. Walgreen Co. et al.*,
No. 19-cv-05392 (N.D. Ill. Dec. 6, 2019) ...................................................................... 7

*Am. Exp. Co. v. Italian Colors Restaurant*,
570 U.S. 228 (2013) ......................................................................................................... 14

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
579 F. Supp. 3d 1133 (N.D. Cal. 2022) .......................................................................... 8

*Baird et al. v. Blackrock Inst. Trust*,
403 F.Supp.3d 765 (N.D. Cal. 2019) .............................................................................. 12

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ......................................................................................3, 9

*Brotherston v. Putnam Invs., LLC*,
907 F.3d 17 (1st Cir. 2018) ........................................................................................2 ,8

*Brown ex rel. Henny Penny Corp. Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*,
No. 3:17-CV-250, 2018 WL 3546186 (S.D. Ohio July 24, 2018) ................................. 15

*Brown-Davis v. Walgreen Co.*,
2020 WL 8921399 (N.D. Ill.) ....................................................................................... 8

*Cal. Ironworkers Field Pension Tr. v. Loomis Sayles & Co.*,
259 F.3d 1036 (9th Cir. 2001) ....................................................................................... 12

*Cassell v. Vanderbilt Univ.*,
285 F.Supp.3d 1056 (M.D. Tenn. 2018) ........................................................................ 10

*CommonSpirit Health*,
37 F.4th 1160 (6th Cir. 2022) ........................................................................................ 8

*Cooper v. Ruane Cunniff & Goldfarb Inc. et al.*,
990 F.3d 173 (2d Cir. 2021) ........................................................................................... 14

*Coyer v. Univar Sols. USA Inc.*,
2022 WL 4534791 (N.D. Ill. Sept. 28, 2022) .............................................................. 11

*Cryer v. Franklin Templeton Resources Inc.*,
2017 WL 818788 (N.D. Cal. Jan. 17, 2017) .................................................................. 10

*Dardaganis v. Grace Capital, Inc.*,
889 F.2d 1237 (2d Cir. 1989) ................................................................4, 12

*Davis v. Magna Int'l of Am., Inc.*,
No. 20-11060, 2021 WL 1212579 (E.D. Mich. Mar. 31, 2021) ....................... 9

*Dorman v. Charles Schwab & Co.*
2018 WL 467357 (C.D. Cal. Jan. 18, 2018) ............................................... 15

*Dover v. Yanfeng US Auto. Interior Sys. I LLC*,
563 F. Supp. 3d 678 (E.D. Mich. 2021) ....................................................2, 8

*Gaines v. BDO USA, LLP*,
No. 22 C 1878, 2023 WL 2587811 (N.D. Ill. Mar. 21, 2023) ...............2, 7, 8, 9

*Garcia, et al. v. Alticor, Inc. et al.*,
2021 WL 5537520 (W.D. Mich. Aug. 9, 2021). Aug. 9, 2021) ....................... 3

*Henderson v. Emory Univ.*,
252 F.Supp.3d 1344 (N.D. Ga. 2017) ....................................................... 3

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022) ............................................................................. 3

*Karg v. Transamerica Corp.*,
2019 WL 3938471 (N.D. Iowa Aug. 20, 2019) ......................................... 14

*Lauderdale v. NFP Ret., Inc.*,
2022 WL 17260510 (C.D. Cal. Nov. 17, 2022) ......................................... 12

*Luckett v. Wintrust Fin. Corp.*,
2023 WL 4549620 (N.D. Ill. Jul. 14, 2023) .............................................. 11

*McCool v. AHS Mgmt. Co., Inc.*,
No. 3:19-CV-01158, 2021 WL 826756 (M.D. Tenn. Mar. 4, 2021) ................. 9

*McNeilly et al. v. Spectrum Health Systems*, *et al.*,
No. 1:20-cv-870 (W.D. Mich. July 16, 2021) .......................................10, 13

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ..............................................................8, 11

*Miller v. Autozone, Inc.*,
2020 WL 6479564 (W.D. Tenn. Sept. 18, 2020) ....................................... 10

*Nicolas v. Trustees of Princeton Univ.*,
No. 17- 3695, 2017 WL 4455897 (D.N.J. Sept. 25, 2017) ............................................................ 9

*Pension Ben Guar. Corp. ex rel. St. Vincent Catholic Medical Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*,
712 F.3d 705 (2d Cir. 2013)) ("*PBGC*") ..................................................................................... 3

*Rodriguez v. Hy-Vee, Inc.*,
2022 WL 16648825 (S.D. Iowa Oct. 21, 2022) ......................................................................... 2

*Sellers v. Trustees of Coll.*,
2022 WL 17968685 (D. Mass. Dec. 27, 2022) ......................................................................... 12

*Silva v. Evonik Corp.*,
2020 WL 12574912 (D.N.J. Dec. 30, 2020) ..........................................................................9, 11

*Smith v. Greatbanc Trust Co.*,
2020 WL 4926560 (N.D. Ill. Aug. 31, 2020) ........................................................................14, 15

*Snyder v. UnitedHealth Grp., Inc.*,
No. CV 21-1049 (JRT/BRT), 2021 WL 5745852, (D. Minn. Dec. 2, 2021) .............................2, 8

*Taha v. Int'l Bhd. Of Teamsters, Loc. 781*,
947 F.3d 464 (7th Cir. 2020) ..................................................................................................... 3

*Tibble v. Edison Int'l*,
575 U.S. 523 (2015) ..................................................................................................................... 3

**Statutes**

29 U.S.C. § 1109 ...........................................................................................................................1

29 U.S.C. § 1132 ...........................................................................................................................1

29 U.S.C. 1132(a) ........................................................................................................................ 14

**Other Sources**

The Employee Retirement Income Security Act of 1974 ......................................................*Passim*

Plaintiffs, by and through their attorneys, on behalf of the Marmon Employees' Retirement Plan ("Plan")," themselves and all others similarly situated, respectfully submit this opposition to Defendants'[1] Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") (ECF Nos. 51 and 52).[2]

## I.    INTRODUCTION

This is a class action brought pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against the Plan's fiduciaries (Defendants) for breaches of their fiduciary duties during the Class Period.

The Defendants breached their fiduciary duties by utilizing their own poorly created investment funds (hereinafter "Marmon Target Date Series" or "Marmon TDFs") which underperformed compared to their commercial alternatives, thus costing the Plan millions of dollars due to lower net investment returns. ¶ 99-100. The Defendants' choice to create their own suite of underperforming target date funds is particularly baffling given that with such a large amount invested in the target date series, the Plan would have been able to choose virtually any available target date series for the Plan. ¶ 76. Furthermore, Defendants' choice to create their own TDF without any meaningful performance history violated Defendants' own Investment Policy Statement ("IPS") which states, "[f]und specific performance will be evaluated over trailing 3-year and 5-year periods on a net of fee basis." ¶ 99.

---

[1] "Defendants" refers to Marmon Holdings, Inc. ("Marmon"), The Board of Directors of Marmon Holdings, Inc. (the "Board"), the Marmon Retirement Administrative Committee, (the "Committee"), and John Does 1-30.

[2] The Memorandum of Law in Support of Defendants' Opposed Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 51) is referred to herein as "Defs. Mem." All references to "¶" or "Complaint" are to the Second Amended Class Action Complaint (ECF No. 46). All capitalized and undefined terms herein shall have the same meaning as ascribed to them in the Complaint.

Plaintiffs have amended the Complaint to include meaningful benchmarks to the Marmon TDFs that the Court found to be lacking in the original complaint. The particular benchmark TDF funds are meaningful benchmarks for the underperforming Marmon TDFs because Morningstar has placed each Plan fund and its comparators in the same peer-group category of funds, which share core similarities. *See Gaines v. BDO USA, LLP*, No. 22 C 1878, 2023 WL 2587811, at *5 (N.D. Ill. Mar. 21, 2023) (accepting comparators based on shared Morningstar fund categories and Morningstar benchmark indices.); *Dover v. Yanfeng US Auto. Interior Sys. I LLC*, 563 F. Supp. 3d 678, 687 (E.D. Mich. 2021) (accepting comparators based on shared Morningstar fund categories and Morningstar benchmark indices); *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 32 (1st Cir. 2018) (approving expert selection as a benchmark an index fund assigned to the same Morningstar category as the plan fund); *Brown-Davis*, 2020 WL 8921399, at *1 (accepting plaintiffs' comparison of plan funds to "benchmark indexes [including] the …Morningstar Lifetime Moderate Index"); *Snyder v. UnitedHealth Grp., Inc.*, No. CV 21-1049 (JRT/BRT), 2021 WL 5745852, (D. Minn. Dec. 2, 2021) (same).

Rather than address relevant legal arguments, Defendants engage in irrelevant and oft-repeated rhetoric branding Plaintiffs' claims as "copycat" and "generic," and accusing Plaintiffs' counsel of following a "standard playbook." Defs. Mem. at 1. But "defense counsel are obviously following a 'playbook,' too, in which … they indiscriminately file motions to dismiss in every case…." *Rodriguez v. Hy-Vee, Inc.*, 2022 WL 16648825, at * 10 (S.D. Iowa Oct. 21, 2022). Moreover, one Court specifically noted the following about Plaintiffs' counsel when they faced a similar unwarranted attack: "[a]t the outset, the Court rejects Defendants' argument that because Plaintiffs have retained counsel that have filed factually similar cases, their allegations are so generic that they cannot survive a motion to dismiss. There is no rule against hiring counsel that specialize in one cause of action or type of lawsuit, and the Court declines to dismiss the complaint

on this ground alone." *Garcia, et al. v. Alticor, Inc. et al.*, 2021 WL 5537520, at *3 (W.D. Mich. Aug. 9, 2021).

 Here, when looking simply at the pleadings and applying the correct standard of review, the Defendants' Motion to Dismiss should be denied based on the merits of Plaintiffs' well plead Second Amended Complaint.

## II.     STANDARD OF REVIEW IN ERISA CASES

When considering a motion to dismiss, the Court "must accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor." *Taha v. Int'l Bhd. Of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). Courts recognize that in cases alleging imprudent fiduciary process, "a claim for a breach of fiduciary duty under ERISA may survive a motion to dismiss— even absent any well-pleaded factual allegations relating directly to the methods employed by the ERISA fiduciary—if the complaint alleges facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident." *Henderson v. Emory Univ.*, 252 F.Supp.3d 1344, 1325-6 (N.D. Ga. 2017) (quoting *Pension Ben Guar. Corp. ex rel. St. Vincent Catholic Medical Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 718 (2d Cir. 2013)) ("*PBGC*"). The reason is simple. Plaintiffs "generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009).

In *Hughes v. Nw. Univ.*, 595 U.S. 170, 175 (2022), the Supreme Court implored lower courts to apply the teachings of *Tibble v. Edison Int'l*, 575 U.S. 523, 529-530 (2015) where the Supreme Court "interpreted ERISA's duty of prudence in light of the common law of trusts and determined that 'a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones.'" *Hughes v. Nw. Univ.*, 595 U.S. 170, 175 (2022) (quoting *Tibble*, 575 U.S. at 530). Lastly, the dicta in *Hughes* that lower courts must give consideration of

3

"reasonable judgments a fiduciary may make" at best suggests the scope of "judgments" ought to be taken up at summary judgment.

## III.    THE SECOND AMENDED COMPLAINTS' ALLEGATIONS

The Marmon Target Retirement Series consistently and materially underperformed industry-accepted benchmarks for target date funds used by investment professionals. ¶ 91. The Marmon Target Retirement Series can be compared to various similar target date funds ("Comparator Funds") and relevant indexes ("Comparator Indexes") as benchmarks. Suitable Comparator funds include the T.Rowe Price Retirement target date suite, the American Funds target date suite, the Mutual of America target date suite, the MFS Lifetime target date suite, Callan GlidePath target date suite and the Voya Target Solution target date suite. These six target date suites are suitable Comparator Funds to the Marmon Target Retirement Series because Morningstar, the most well respected and accepted financial industry fund database places all six of the Comparator Funds in the Morningstar Lifetime Moderate Index category. ¶ 92. The performance of the Marmon Target Retirement Series lagged behind the performance of the applicable Comparator Funds for many years before the inception of the Class Period clearly showing that it was an imprudent choice for the Plan. ¶ 97.

The yearly returns since the inception of the Marmon Target Retirement Series shows that it was an imprudent selection when compared to its benchmarks and peers. It should be noted here that Marmon's own Investment Policy Statement requires that any fund included in the Plan have a meaningful performance history. As stated in its IPS: [f]und specific performance will be evaluated over trailing 3-year and 5-year periods on a net of fee basis." Under ERISA an IPS becomes part of the Plan Document and a failure to follow an IPS constitutes a breach of fiduciary duty. *Dardaganis v. Grace Capital, Inc.*, 889 F.2d 1237, 1241-42 (2d Cir. 1989). Accordingly, it's inexplicable why the Plan fiduciaries would decide to create their own target date suite with

no performance history as of August of 2017 with the first set full of returns only available on a yearly basis as of 2018. To make matters worse, the target date years 2025, 2035, 2045 and 2055 weren't created and added to the Plan until April of 2019. ¶ 98.

Using 2018 as a sample year,[3] it's clear that out of more than 200 Morningstar peer funds in the Lifetime Moderate target date group, the Marmon Target Retirement Series was less than mediocre, at best. Here, at December 31, 2018, six target date series from this Morningstar peer group will be analyzed, namely the T.Rowe Price Retirement Tr-A target date suite, Mutual of America 2040 target date suite, the American Funds Target Retirement R6 target date suite and the MFS Lifetime I target date suite. At 2018, as demonstrated by the chart below, the six comparators were superior to the underperforming internally created Marmon Target Retirement Series. ¶ 99.



_____

[3] A similar analysis for 2019, 2020, 2021 and 2022 is attached as Appendix "B" to the Complaint.

Clearly, the Plan fiduciaries' decision to add internally created funds which had a less than three-year performance history, in violation of its own IPS was an error that cost Plan participants millions in lost retirement savings. In 2018, the Marmon Target Retirement Series significantly underperformed industry accepted benchmarks and should never have been selected for inclusion in the Plan, or, at the very least, should have been replaced by the start of the Class Period. The Marmon Target Retirement Series consistently underperformed the OE Benchmark which is the Lifetime Moderate Index Category, discussed above, the OE Peer Group Median which is the median performance of all funds in the Lifetime Moderate Index Category and the SA Peer Group Median being funds that are considered separate accounts included in the Lifetime Moderate Index Category. Given these facts, it's not surprising that the Marmon Target Retirement Series significantly underperformed all six of the Comparator Funds. ¶ 100.

The 2018 performance of the Marmon Target Retirement Series can be compared to another underperforming target date series in the Lifetime Moderate Index Category namely the JPMCB SmartRetirement Pasv Blnd 2040-CF fund which had some of the worst fund rankings in its Morningstar Category, namely, the Target-Date 2040 Category whose funds make up the appropriate index, the Lifetime Moderate 2040 TR USD (ticker MSAAM40M). ¶ 101. In 2018, JPMCB SmartRetirement Pasv Blend 2040 fund ranked in the 56th percentile out of 239 possible funds. In other words, there were 133 better performing funds in this category. But, yet, the return of the Marmon Target Retirement 2040 Fund was worse than even this underperforming fund. In 2018, the JPMCB SmartRetirement Pasv Blnd 2040-CF fund had a negative -7.97% return while the Marmon Target Retirement 2040 Fund had a return of negative -9.11%, as demonstrated in the chart above. Certainly given this fact, the Marmon Target Retirement 2040 Fund had one of the worst performance histories in its Morningstar category demonstrating there would have been at least 140 better performing funds that could have been selected for the Plan. ¶ 102.

6

## IV.    ARGUMENT

### A.  The Plan's Target Date Funds Were Imprudent

#### 1.    Plaintiffs allege Meaningful Benchmarks to the Marmon TDFs

Defendants challenge Plaintiffs' selection of the comparators for the Marmon Target Date Funds. Defendants' arguments fail for several reasons. Contrary to Defendants' argument, the SAC does in fact discuss why each comparator is a sensible selection. T.Rowe Price Retirement target date suite, the American Funds target date suite, the Mutual of America target date suite, the MFS Lifetime target date suite, Callan GlidePath target date suite, and the Voya Target Solution target date suite are suitable comparator funds to the Marmon TDFs because Morningstar, the most well respected and accepted financial industry fund database places these funds in the Morningstar Lifetime Moderate Index category.  A Morningstar Category is assigned by placing funds [*e.g.*, T.Rowe Price Retirement target date suite, the American Funds target date suite, the Mutual of America target date suite, the MFS Lifetime target date suite, Callan GlidePath target date suite, and the Voya Target Solution target date suite etc.] into peer groups based on their underlying holdings. The underlying securities in each portfolio are the primary factor in [Morningstar's] analysis . . . . Funds are placed in a category based on their portfolio statistics and compositions over the past three years.  Analysis of performance and other indicative facts are also considered." *See* Morningstar's summary of the Northern Trust Focus 2045 Fund, filed in *Allegretti v. Walgreen Co. et al*., No. 19-cv-05392 at Dkt. 43 ECF pg. 28 (N.D. Ill. Dec. 6, 2019). The analysis in *Allegretti* similarly deals with the Morningstar Lifetime Moderate Index category. *Id.*

Here, the comparator funds are meaningful benchmarks for the underperforming Plan funds because Morningstar has placed each Plan fund and its comparators in the same peer-group category of funds, which share core similarities.  *See Gaines v. BDO USA, LLP*, No. 22 C 1878, 2023 WL 2587811, at *5 (N.D. Ill. Mar. 21, 2023) (accepting comparators based on shared

7

Morningstar fund categories and Morningstar benchmark indices.); *Dover v. Yanfeng US Auto. Interior Sys. I LLC*, 563 F. Supp. 3d 678, 687 (E.D. Mich. 2021) (accepting comparators based on shared Morningstar fund categories and Morningstar benchmark indices); *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 32 (1st Cir. 2018) (approving expert selection as a benchmark an index fund assigned to the same Morningstar category as the plan fund); *Brown-Davis*, 2020 WL 8921399, at *1 (accepting plaintiffs' comparison of plan funds to "benchmark indexes [including] the …Morningstar Lifetime Moderate Index"); *Snyder v. UnitedHealth Grp., Inc.*, No. CV 21-1049 (JRT/BRT), 2021 WL 5745852, (D. Minn. Dec. 2, 2021) (same). Here, Plaintiffs selected appropriate Comparators with a reasonable basis for being used here.

Defendants' reference to cases such as *Meiners v. Wells Fargo & Co*., 898 F.3d 820 (8th Cir. 2018) and *CommonSpirit Health,* 37 F.4th 1160 (6th Cir. 2022) regarding differing target dates funds does not apply to Plaintiffs' allegations. The facts in this case differ from those in *Meiners* and *Commonspirit* because those plaintiffs' primary claims centered on a comparison between arguably different funds. Here, as explained above, the comparator funds are meaningful benchmarks for the underperforming Plan funds because Morningstar has placed each Plan fund and its comparators in the same peer-group category of funds, which share core similarities. *See Gaines v. BDO USA, LLP*, at *5.

Defendants rely on several, mostly out-of-circuit district court opinions, to argue Plaintiffs did not allege a meaning comparator. These decisions are of no moment because they do not contain the meaningful benchmarks bases on Morningstar categories as Plaintiffs do here. For example, in *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1154 (N.D. Cal. 2022)*,* the challenged TDF included "Non-Traditional Investment" class, such as hedge funds, private equity and commodities, whereas the comparator TDFs had traditional investments. *Id.* Therefore, the court found that the comparator funds were not a meaningful comparison to the

challenged TDF which included "Non-Traditional Investments." Here, these minor differences in allocations of the same asset classes are simply not comparable to the facts in *Anderson* where the plaintiffs were trying to compare traditional investment asset classes with non-traditional asset classes. There will always be minor differences when comparing two funds, but the minor differences do not create material differences in "risks, aims and rewards" as Defendants at defendants attempt to allege.

### 2. Whether Plaintiffs' Comparators are Meaningful Comparators for the Challenged Plan Funds Is Not Suitable at the Motion to Dismiss Stage

Defendants' arguments that Plaintiffs have not alleged apt comparators for Plan's challenged funds, Defs. Mem. at 6-12, fails for other reasons. As explained above, the comparator funds are meaningful benchmarks for the underperforming Plan funds because Morningstar has placed each Plan fund and its comparators in the same peer-group category of funds, which share core similarities. *See Gaines v. BDO USA, LLP*, at *5. Thus, Defendants really take issue with Plaintiffs' choice of comparators, but the argument raises issues of fact that require assessment on a more developed record. *See Silva v. Evonik Corp.*, 2020 WL 12574912, at *6 (D.N.J. Dec. 30, 2020) (quoting *Nicolas v. Trustees of Princeton Univ.*, No. 17- 3695, 2017 WL 4455897, at *5 (D.N.J. Sept. 25, 2017)) (an inquiry into 'whether the alternative funds Plaintiff[s] suggest[ ] are apt comparisons' is a question of fact unsuitable for resolution on a motion to dismiss.); *Davis v. Magna Int'l of Am., Inc.*, No. 20-11060, 2021 WL 1212579, at *6 (E.D. Mich. Mar. 31, 2021) (quoting *Braden*, 588 F.3d at 598) ("[t]he Court finds *Braden* instructive in recognizing that '[n]o matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.'"); *McCool v. AHS Mgmt. Co., Inc.*, No. 3:19-CV-01158, 2021 WL 826756, at *5 (M.D. Tenn. Mar. 4, 2021) ("the appropriate inquiry on these claims involves issues of fact, which cannot be determined on a

motion to dismiss"); *Cassell v. Vanderbilt Univ.*, 285 F.Supp.3d 1056, 1067 (M.D. Tenn. 2018) (same); *Cryer v. Franklin Templeton Resources Inc.*, 2017 WL 818788, at *4 (N.D. Cal. Jan. 17, 2017) (same). Similarly, in *Miller v. Autozone, Inc.*, 2020 WL 6479564, at *8-10 (W.D. Tenn. Sept. 18, 2020) defendants argued "[p]laintiffs' claim must fail because it is premised on inappropriate comparison of actively managed funds to passively managed Vanguard index funds." 2020 WL 6479564, at * 8. AutoZone, like Defendants here argued "the actively managed GoalMaker funds do not employ similar operations or investment strategies to passively managed Vanguard funds." *Id.* The court rejected this argument. *Id.*

### 3. Plaintiffs' Allegations of Underperformance Demonstrates Imprudence

Defendants mischaracterize Plaintiffs' allegations as improperly focused on the ultimate outcome of the investment rather than the process, when in fact the Complaint alleges the Defendants neglected to act on information available to them at the time of the underperformance. The court in *McNeilly et al. v. Spectrum Health Systems*, *et al.*, No. 1:20-cv-870 (W.D. Mich. July 16, 2021) (Motion to Dismiss Order) (Attached to Gyandoh Decl. as Ex. 1) held, when "Plaintiffs bring allegations that the Committee failed *for years* to perform sufficient reviews or investigations into the Plan's performance" allegations can survive a motion to dismiss because "it is plausible that Defendants had access to ample performance data at various points throughout the relevant period, and Plaintiffs' allegation is that Defendants did not adequately consider that information." *Id*. at p. 13. (Emphasis in the original). Here, the yearly returns since the inception of the Marmon Target Retirement Series, show that it was an imprudent selection when compared to its benchmarks and peers. In 2018, the first year with a full set of returns for the Marmon TDF, the Marmon TDF significantly underperformed industry accepted benchmarks ¶ 99-100.

The 2018 performance of the Marmon Target Retirement Series can be compared to another underperforming target date series in the Lifetime Moderate Index Category, namely the

JPMCB SmartRetirement Pasv Blnd 2040-CF fund which had some of the worst fund rankings in its Morningstar Category, namely, the Target-Date 2040 Category whose funds make up the appropriate index, the Lifetime Moderate 2040 TR USD (ticker MSAAM40M). ¶ 101. In 2018, JPMCB SmartRetirement Pasv Blend 2040 fund ranked in the 56th percentile out of 239 possible funds. In other words, there were 133 better performing funds in this category. But, yet, the return of the Marmon Target Retirement 2040 Fund was worse than even this underperforming fund. In 2018, the JPMCB SmartRetirement Pasv Blnd 2040-CF fund had a negative -7.97% return while the Marmon Target Retirement 2040 Fund had a return of negative -9.11%, as demonstrated in the chart above. Certainly given this fact, the Marmon Target Retirement 2040 Fund had one of the worst performance histories in its Morningstar category demonstrating there would have been at least 140 better performing funds that could have been selected for the Plan. ¶ 102.

Defendants cite *Coyer v. Univar Sols. USA Inc.*, 2022 WL 4534791, at *6 (N.D. Ill. Sept. 28, 2022), *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018), and *Luckett v. Wintrust Fin. Corp.*, 2023 WL 4549620, at *3 (N.D. Ill. Jul. 14, 2023) to argue there is no obligation to pick the "best-in-class" performing fund. Defs. Mem. at 6. However, as described above, in its first year, the Marmon TDF was outperformed by some of the worst-in-class performing funds when benchmarked against comparable funds. Despite its terrible performance, Defendants doubled down and added Marmon TDFs to the Plan in April of 2019 for the target date years 2025, 2035, 2045 and 2055. ¶ 98. It is inexplicable that the Plan fiduciaries would have undertaken creating their own suite of target date funds when so many well-established funds were available, and it is even more inexplicable that it would double down on the Marmon TDFs after such poor performance. Additionally, other courts have held that degree of savings is not a proper inquiry. In *Silva v. Evonik Corp.*, 2020 WL 12574912, at *6 (D.N.J. Dec. 30, 2020), the court held,

"the relevant inquiry is whether the Investment Committee prudently investigated cheaper alternative investments, regardless of the degree of savings." *Id.*

Defendants cite several cases to argue that short term underperformance alone is not enough to show imprudence, but Plaintiffs argue the Marmon TDF's underperformed for its entire existence from 2018 to the present. Defendants want to escape liability for their poorly performing fund because Defendants created it in 2018 and does not have a long performance history, but Marmon's own Investment Policy Statement requires that any fund included in the Plan have a meaningful performance history. As stated in its IPS: [f]und specific performance will be evaluated over trailing 3-year and 5-year periods on a net of fee basis." Under ERISA an IPS becomes part of the Plan Document and a failure to follow an IPS constitutes a breach of fiduciary duty. *Dardaganis v. Grace Capital, Inc.*, 889 F.2d 1237, 1241-42 (2d Cir. 1989). "[f]iduciaries who are responsible for plan investments governed by ERISA 'must comply' with the 'plan's written statements of investment policy, insofar as those written statements are consistent with the provisions of ERISA.'" *Lauderdale v. NFP Ret., Inc.*, 2022 WL 17260510, at *10 (C.D. Cal. Nov. 17, 2022) (quoting *Cal. Ironworkers Field Pension Tr. v. Loomis Sayles & Co.*, 259 F.3d 1036, 1042 (9th Cir. 2001)); *See also Sellers v. Trustees of Coll.*, 2022 WL 17968685, at *14 (D. Mass. Dec. 27, 2022). Defendants argue this part of their IPS only applies to existing funds and not the selection of new funds (Defs. Mem. at 14.); however, there is no logical reason to have a different process for evaluating existing funds as opposed to new funds. Apparently, Defendants believe they don't need to have a prudent process for evaluating new funds, only existing funds. The court in *Baird et al. v. Blackrock Inst. Trust*, 403 F.Supp.3d 765, 780 (N.D. Cal. 2019) found allegations that a plan committee's failure to follow an investment policy statement when it came to evaluating proprietary funds was sufficient, when considered with other factors, to state a claim under ERISA.

12

After mischaracterizing Plaintiffs' allegations as improperly focused on the ultimate outcome of the investment rather than the process and for only focusing on short-term underperformance when the fund was just created in 2018, Defendants attempt to argue that isolated one-year instances in which the Marmon TDFs nearly matched or outperformed some (but not other) Comparator Funds or Indexes is proof that the Defendant-Fiduciaries were prudent to create and maintain the Marmon TDFs. Defs. Mem. at 8. However, this misconstrues Plaintiffs' allegations. As stated above, Plaintiffs' SAC alleges the Defendants neglected to act on information available to them at the time of the underperformance. *Spectrum Health Systems*, *et al.*, No. 1:20-cv-870 (W.D. Mich. July 16, 2021). Plaintiffs allege that Defendants should have never created their own custom TDF when superior established TDFs were available. ¶ 76. The 2018 significant underperformance of the Marmon TDFs should have confirmed for the fiduciaries that it was a mistake to not use the superior established TDFs. ¶ 99-112. Instead, despite its terrible performance, Defendants doubled down and added Marmon TDFs to the Plan in April of 2019 for the target date years 2025, 2035, 2045 and 2055. ¶ 98. Furthermore, despite isolated instances of the Marmon TDF outperforming certain benchmarks over the class period, the Marmon TDFs continued to underperform benchmarks throughout the class period. SAC Appx. B. Isolated instances of the Marmon TDF outperforming certain benchmarks are not proof of a prudent process as alleged by the Defendants.

Defendants also cite to DOL guidance encouraging the *consideration* of "custom" target date fund options to argue there is nothing per se wrong with creating their custom TDF. Defs. Mem. at 13. Plaintiffs however do not argue that it is per se imprudent to create a TDF, but rather that it was imprudent to ultimately choose the imprudent custom target date funds at issue here over prudent alternatives.

Therefore, Plaintiffs state a plausible claim and Defendants' Motion should be denied.

13

**B. The SAC Alleges Sufficient Facts to State A Claim for Failure to Monitor**

Like the defendants in *Karg v. Transamerica Corp.*, Defendants argue Plaintiffs' failure to monitor claim fails because the underlying imprudent management claim fails. Defs. Mem. at 15. This is of no moment, because Plaintiffs "have pleaded the underlying fiduciary breach necessary to support their failure to monitor claim." *Karg*, 2019 WL 3938471, at * 9.

**C. Plaintiffs can Bring a Class-Action and Derivative Action Complaint**

It is telling that Defendants saved their argument that Plaintiffs cannot bring a class action suit for last. Defs. Mem. at 15. It is by far their weakest argument. The Eighth Amendment to the Plan, effective January 1, 2022, purportedly constituting a "class action waiver" is deeply flawed. It is akin to a clause compelling arbitration, thus case law regarding arbitration clauses are instructive.

*First,* ERISA Section 502(a), 29 U.S.C. 1132(a), authorizes pension plan participants to bring suit on behalf of a plan to recover losses to a plan. Section 502(a) plaintiffs thus proceed in a representative capacity. This reality underpins the analysis of Defendants' argument. The argument fails because the Plan amendment impermissibly prohibits Plaintiffs from seeking plan-wide relief in violation of the effective vindication exception to such agreements. *See Smith v. Greatbanc Trust Co.*, 2020 WL 4926560, at *4 (N.D. Ill. Aug. 31, 2020) (citing *Am. Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 235-36 (2013)) ("Arbitration agreements that act as a 'prospective waiver of a party's right to pursue statutory remedies' are unenforceable, on public-policy grounds."); *See also Cooper v. Ruane Cunniff & Goldfarb Inc. et al.*, 990 F.3d 173, 184 (2d Cir. 2021) (finding arbitration provision that prohibited "joinder of multiple parties and class or collective actions" potentially "unenforceable" because it conflicted with Second Circuit case law construing "ERISA § 502(a)(2) to require parties suing on behalf of a plan" to "employ procedures to protect effectively the interests" of other plan participants).

14

*Second*, Marmon's unilateral action to include a class action waiver in the Plan cannot bind Plaintiffs because Plaintiffs did not knowingly agree to such a clause. *See Smith*, 2020 WL 4926560, at *4. The court rejected the contention that "continued participation in a plan is the equivalent of an agreement to any plan amendments." *Id.* at 3. Rather, the court agreed with the district court's conclusion in *Dorman v. Charles Schwab & Co.* that "the Plan document was executed unilaterally by the plan sponsor…A plan document drafted by fiduciaries – the very people whose actions have been called into question by the lawsuit – should not prevent plan participants and beneficiaries from vindicating their rights in court." *Id.* at 3 (quoting *Dorman v. Charles Schwab & Co.*, 2018 WL 467357, at *5 (C.D. Cal. Jan. 18, 2018), *rev'd sub nom. Dorman v. Charles Schwab & Co.*, 780 F.App'x 510 (9th Cir. 2019));[4] *see also Brown ex rel. Henny Penny Corp. Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, No. 3:17-CV-250, 2018 WL 3546186, at *5 (S.D. Ohio July 24, 2018) ("Allowing the fiduciary to unilaterally require plan participants to arbitrate claims for breach of fiduciary duty would, in a sense, be allowing the fox to guard the henhouse.") (internal quotation marks and citation omitted). Nor is the amendment valid as to the Plaintiffs who were not even in the Plan when the amendment was added. Defendants do not even bother to state whether any of the Plaintiffs were still in the Plan as of January 1, 2022.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' opposed motion to dismiss Plaintiffs' second amended complaint in its entirety, or in the alternative, to grant Plaintiffs leave to amend.

Dated: January 2, 2024                           Respectfully submitted,

---

[4] The Seventh Circuit affirmed the district court's decision in *Greatbanc Trust* on appeal without deciding whether a plan can unilaterally force plan participants to arbitration. *See Smith*, 13 F.4th at 623 ("We express no view on whether Smith consented to the arbitration provision, whether he received notice of that provision, or even whether a plan's sponsor can unilaterally amend the plan to include such a provision.").

**CAPOZZI ADLER, P.C.**

/s/ Mark K. Gyandoh
Mark K. Gyandoh, Esquire
(*Admitted to General Bar ND ILL*)
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Fax (717) 233-4103
Email: markg@capozziadler.com

**CAPOZZI ADLER, P.C.**
Donald R. Reavey, Esquire
(admitted *pro hac vice*)
2933 North Front Street
Harrisburg, PA 17110
Tel: (717) 233-4101
Fax (717) 233-4103
Email:  donr@capozziadler.com

*Counsel for Plaintiffs and the Putative Class*

16

**CERTIFICATE OF SERVICE**

       I hereby certify that on January 2, 2024, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

                                     By:   */s/ Mark K. Gyandoh*              
                                             Mark K. Gyandoh, Esq.