**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JENNIFER R. LARD, JOHN G. JUERGENS, GERALD L. ROBINSON, SCOTT W. ANDERSON, THOMAS A. PITERA, SHARON BRADLEY-SMITH and TORANZ J. PLUMMER, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MARMON HOLDINGS, INC., THE BOARD OF DIRECTORS OF MARMON HOLDINGS, INC., MARMON RETIREMENT ADMINISTRATIVE COMMITTEE, and JOHN DOES 1-30, <br><br> Defendants. | Case No. 1:22-cv-4332 <br><br> Honorable Jeffrey I. Cummings |

**REPLY IN SUPPORT OF DEFENDANTS' OPPOSED MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

                                                                             **Page**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.      Plaintiffs Fail To State An Imprudence Claim. ................................................................... 1

          A.      Plaintiffs Have Not Pleaded Material Underperformance ...................................... 2

          B.      Plaintiffs Have Not Pleaded A Meaningful Benchmark ......................................... 4

          C.      Plaintiffs Have Not Pleaded Any Other Indicia Of Imprudence ............................ 8

II.     Plaintiffs Fail To State A Monitoring Claim ....................................................................... 9

III.    Plaintiffs Cannot Bring A Class Or Representative Action ............................................... 9

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albert v. Oshkosh Corp.*,
  47 F.4th 570 (7th Cir. 2022) ...................................................................................................7

*Anderson v. Intel Corp. Inv. Policy Comm.*,
  579 F. Supp. 3d 1133 (N.D. Cal. 2022) ................................................................................6, 7

*Antoine v. Marsh & McLennan Cos.*,
  2023 WL 6386005 (S.D.N.Y. Sept. 30, 2023).......................................................................2, 4

*Bekker v. Neuberger Berman Grp. LLC*,
  2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018)..........................................................................3

*Bonte v. U.S. Bank, N.A.*,
  624 F.3d 461 (7th Cir. 2010) ....................................................................................................9

*Brotherston v. Putnam Invs., LLC*,
  907 F.3d 17 (1st Cir. 2018).......................................................................................................6

*Brown v. Wilmington Trust, N.A.*,
  2018 WL 3546186 (S.D. Ohio Jul. 24, 2018).........................................................................10

*Brown-Davis v. Walgreen Co.*,
  2020 WL 8921399 (N.D. Ill. Mar. 16, 2020).......................................................................6, 7

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
  990 F.3d 173 (2d Cir. 2021)...................................................................................................10

*Coyer v. Univar Sols. USA Inc.*,
  2022 WL 4534791 (N.D. Ill. Sept. 28, 2022) ..........................................................................7

*Dorman v. Charles Schwab Corp.*,
  780 F. App'x 510 (9th Cir. 2019) ...........................................................................................10

*Dover v. Yanfeng US Auto. Interior Sys. I LLC*,
  563 F. Supp. 3d 678 (E.D. Mich. 2021)...............................................................................6, 7

*England v. DENSO Int'l Am., Inc.*,
  2023 WL 4851878 (E.D. Mich. Jul. 28, 2023) ........................................................................3

*Evans v. Associated Banc-Corp*,
  2022 WL 4638092 (E.D. Wis. Sept. 30, 2022)........................................................................6

*Fitzpatrick v. Neb. Methodist Health Sys.*,
  2023 WL 5105362 (D. Neb. Aug. 9, 2023) ....................................................................5, 6, 7

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Gaines v. BDO USA, LLP*,
   2023 WL 2587811 (N.D. Ill. Mar. 21, 2023) ............................................................................6

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999) ..............................................................................................................10

*Jones v. DISH Network Corp.*,
   2023 WL 2644081 (D. Colo. Mar. 27, 2023) ..........................................................................3

*Lanahan v. Cnty. of Cook*,
   41 F.4th 854 (7th Cir. 2022) ...................................................................................................5

*Luckett v. Wintrust Fin. Corp.*,
   2023 WL 4549620 (N.D. Ill. Jul. 14, 2023) ............................................................................7

*Mathews v. Sears Pension Plan*,
   144 F.3d 461 (7th Cir. 1998) ................................................................................................10

*Matney v. Barrick Gold of N. Am.*,
   80 F.4th 1136 (10th Cir. 2023) ...............................................................................................7

*Matousek v. MidAmerican Energy Co.*,
   51 F.4th 274 (8th Cir. 2022) ...................................................................................................7

*McNeilly v. Spectrum Health Sys.*,
   No. 1:20-cv-870 (W.D. Mich. Jul. 16, 2021), ECF No. 21 ......................................................2

*Riley v. Olin Corp.*,
   2023 WL 371872 (E.D. Mo. Jan. 24, 2023) ............................................................................6

*Robertson v. Argent Trust Co.*,
   2022 WL 2967710 (D. Ariz. Jul. 27, 2022) ..........................................................................10

*Ruilova v. Yale-New Haven Hosp., Inc.*,
   2023 WL 2301962 (D. Conn. Mar. 1, 2023) ..........................................................................3

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ................................................................................................................9

*Smith v. Bd. of Directors of Triad Mfg., Inc.*,
   13 F.4th 613 (7th Cir. 2021) ............................................................................................9, 10

*Smith v. CommonSpirit Health*,
   37 F.4th 1160 (6th Cir. 2022) ................................................................................4, 7, 9, 10

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Snyder v. UnitedHealth Grp., Inc.*,
 2021 WL 5745852 (D. Minn. Dec. 2, 2021) .......................................................................... 6, 7

**INTRODUCTION**

In their opening brief (Doc. 52, "Defs. Br."), Defendants explained that Plaintiffs' ERISA claims should be dismissed because the Complaint (Doc. 46, "Compl.") does not plead facts showing that the target-date funds ("TDFs") customized for the Marmon Employees' Retirement Plan ("Plan") materially underperformed meaningful benchmarks or that the selection and retention of the Marmon TDFs as Plan investment options exhibit other indicia of imprudence. Plaintiffs respond (Doc. 57, "Pls. Br.") in two ways. First, they repeatedly misrepresent what their Complaint alleges about the Marmon TDFs in an effort to distract from the allegations that foreclose their claims. Second, they ignore the prior dismissal ruling in this case (Doc. 42, "MTD Order") and the many decisions in other cases dismissing similarly threadbare imprudence claims. Those maneuvers fail. Under established case law, the Complaint's allegations fall far short of pleading imprudence. Indeed, Plaintiffs' decision to resort to such maneuvers leaves no doubt that they do not and cannot state a claim. This case should be dismissed with prejudice.

**ARGUMENT**

**I.      Plaintiffs Fail To State An Imprudence Claim.**

Defendants' opening brief showed that the Complaint fails to plead an ERISA imprudence claim for three independent reasons. First, the Complaint reveals that the Marmon TDFs did not meaningfully underperform the alleged comparators. Defs. Br. 6-8. Second, the Complaint alleges no facts establishing the alleged comparators as meaningful benchmarks. *Id.* at 8-12. And, third, the Complaint pleads no other indicia of imprudence. *Id.* at 12-14. Plaintiffs try to dodge dismissal on those grounds by mischaracterizing the Complaint and citing irrelevant case law. But the fact remains that their imprudence allegations suffer from exactly the same defects that led to dismissal of their prior complaint and similarly deficient complaints in other prudence cases.

1

### A. Plaintiffs Have Not Pleaded Material Underperformance.

Plaintiffs fail to rebut Defendants' showing that a few percentage points of purported underperformance in 2018 is not the kind of sustained and substantial underperformance that might reflect imprudence. Defs. Br. 6-8.[1]

Plaintiffs first assert that the Marmon TDFs underperformed "for [their] entire existence from 2018 to the present." Pls. Br. 12.[2] But Plaintiffs do not back up that assertion. They say nothing specific about the performance of Marmon TDFs in 2019, 2020, 2021, or 2022. And the Complaint itself shows that, in 2020, 2021, and 2022, Marmon TDFs repeatedly *outperformed* many of Plaintiffs' Comparator Funds and Comparator Indexes. Compl., App'x B at 2-4. Contrary to Plaintiffs' characterization, those instances of outperformance were hardly "isolated." Between 2020 and 2022, the Marmon TDFs outperformed roughly half of the alleged comparators across all target dates, while all but one Marmon TDF bested all of the comparators at least once. *Id.* Some outperformance was especially pronounced, as with the 2021 returns for the 2030 Marmon TDF, which outperformed all three Comparator Indexes and four of six Comparator Funds. *Id.* at 3. Such outperformance is an accepted ground for dismissing imprudence claims. Defs. Br. 8 (citing cases); *Antoine v. Marsh & McLennan Cos.*, 2023 WL 6386005, at 11 (S.D.N.Y. Sept. 30, 2023) (no imprudence where challenged TDFs outperformed some comparators in 2021 and 2022).

---

[1] Plaintiffs cite only one decision in support of their underperformance arguments, *McNeilly v. Spectrum Health Sys.*, No. 1:20-cv-870 (W.D. Mich. Jul. 16, 2021), ECF No. 21, which involved allegedly excessive costs and fees. Doc. 58-1 at 9-10. All it said about underperformance is that hindsight allegations are improper but that an alleged failure to review the performance of allegedly high-cost investment vehicles for years stated a imprudence claim. It did not address the issue here, whether slight and short-term underperformance creates an inference of imprudence.
[2] Plaintiffs also assert that the Marmon TDFs underperformed *before the class period* (Pls. Br. 4, 6), which allegedly begins in 2016 (Compl. ¶ 38). But that makes no sense. According to the Complaint, the first Marmon TDFs were not established until late 2017. Compl. ¶ 98.

2

Plaintiffs thus are left with their argument that allegedly "significant" underperformance in 2018 alone supposedly "should have confirmed" that selecting and retaining the Marmon TDFs was a "mistake." Pls. Br. 10-11, 13. That argument faces two insurmountable problems.

First, the Complaint refutes the notion that 2018 underperformance was "significant." The Complaint's chart of 2018 returns shows that differences between returns for the Marmon TDFs and the purported comparators never reached 5% and nearly always were less than 2%. Compl. ¶ 99.[3] Courts routinely reject imprudence claims based on such slight underperformance. Defs. Br. 6 (citing cases); *Jones v. DISH Network Corp.*, 2023 WL 2644081, at *7 (D. Colo. Mar. 27, 2023) (1% to 3.5% underperformance insufficient); *Ruilova v. Yale-New Haven Hosp., Inc.*, 2023 WL 2301962, at *15 (D. Conn. Mar. 1, 2023) (same for underperformance of up to 3.63%); *Bekker v. Neuberger Berman Grp. LLC*, 2018 WL 4636841, at *2, *7 (S.D.N.Y. Sept. 27, 2018) (same for 4.4% underperformance). And Plaintiffs identify no case to the contrary.

Second, one year of underperformance is not enough to infer imprudence. The MTD Order so ruled (Doc. 42 at 10), consistent with the many decisions rejecting imprudence claims based on one, three, or even five years of underperformance. Defs. Br. 6-7 (citing cases); *England v. DENSO Int'l Am., Inc.*, 2023 WL 4851878, at *9 (E.D. Mich. Jul. 28, 2023); *Ruilova*, 2023 WL 2301962, at *15. Plaintiffs ignore the MTD Order's ruling on this subject. And they fail to cite any decision that has inferred imprudence based on one year's returns.

That is not surprising. As courts have observed in dismissing suits alleging just a few years of underperformance, basing retention of long-term retirement investments on short-term returns

---

[3] Plaintiffs get no help from their allegation that, in 2018, the 2040 Marmon TDF underperformed another 2040 fund supposedly in the 56th percentile of the Morningstar Lifetime Moderate Index category by 1.14%. Compl. ¶¶ 101-02; Pls. Br. 10-11. That allegation, at most, suggests that 2040 Marmon TDF was roughly in the middle of the pack, which is hardly the basis for an imprudence claim.

3

would be affirmatively imprudent because it leads to a cycle of selling low and buying high as shifting market conditions make overperformers one year become underperformers the next and vice versa. *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) ("Precipitously selling a well-constructed portflio in response to disappointing short-term losses … is one of the surest ways to frustrate long-term growth of a retirement plan."); *Antoine*, 2023 WL 6386005, at *11 ("a prudent fiduciary necessarily must factor long-term outcomes into the investment calculus for retirement funds, since they are meant to be managed over decades"). For instance, in 2018, the American Funds 2060 TDF was the best performing comparator and beat the Marmon 2060 TDF by about 4%, but, in 2022, the American Funds 2060 TDF was the worst performing comparator and lagged the Marmon 2060 TDF by about 4%. Compl. ¶ 99 & App'x B at 4. Switching from the Marmon TDF to the American Funds TDF *after* 2018—as Plaintiffs say was necessary—would have made Plan participants worse off in 2022.

In short, there is no meaningful underperformance from which to infer imprudence.

### B. Plaintiffs Have Not Pleaded A Meaningful Benchmark.

Plaintiffs also fail to overcome Defendants' showing that the Complaint does not plead anything about the Comparator Funds or Comparator Indexes that would qualify them as meaningful benchmarks for the Marmon TDFs. Defs. Br. 8-12.

Plaintiffs principally argue that the Comparator Funds are suitable benchmarks because "Morningstar has placed" the Marmon TDFs "in the same" Lifetime Moderate Index "peer-group category" as the Comparator Funds. Pls. Br. 2, 4, 7, 8, 9. The Complaint refutes that falsehood. It acknowledges that, because the Marmon TDFs were internally created exclusively for the Plan, Morningstar *does not* place the Marmon TDFs in any category. Compl. ¶ 95. The Complaint thus baselessly *speculates* about how Morningstar would have categorized the Marmon TDFs. *Id.*; Defs. Br. 9-11. Unable to defend that speculation, Plaintiffs now invent an untrue fact that they

4

hope will stave off dismissal. The Court should reject that maneuver and apply the well-established rule that "sheer speculation" cannot save a claim from dismissal. *Lanahan v. Cnty. of Cook*, 41 F.4th 854, 862 (7th Cir. 2022).

Even if the Court accepted Plaintiffs' speculation that the Marmon TDFs would be in the Lifetime Moderate Index category, that still would not make the Comparator Funds meaningful benchmarks. That Morningstar category contains over 200 funds with a wide range of characteristics that materially affect expected returns. Compl. ¶ 95. As Defendants' opening brief explained, some are actively managed, while others are passively managed. Defs. Br. 2-3, 10-11. Some pursue more high-risk strategies, while others pursue more conservative ones. *Id.* Some have "to" glide paths, while others have "through" glide paths. *Id.* And different funds allocate money among stocks, bonds, and other assets in very different ways. *Id.*

The Complaint pleads no facts showing that the Comparator Funds match the Marmon TDFs on any of those dimensions. And Plaintiffs do not otherwise identify any shared characteristics. Instead, Plaintiffs offer unexplained and unsupported assertions that the differences between the Comparator Funds and the Marmon TDFs are "minor" and that all funds in the same Morningstar category share unidentified "core similarities." Pls. Br. 8-9. In other words, Plaintiffs argue that pleading a meaningful benchmark merely requires identifying a fund that is (or supposedly would be) in the same Morningstar category as the challenged fund.

Not surprisingly, many courts have rejected that argument. As those courts have explained, merely being in the same Morningstar category does not make a fund a meaningful benchmark because Morningstar categories are broad, and funds in the same category can have important differences. *Fitzpatrick v. Neb. Methodist Health Sys.*, 2023 WL 5105362, at *2, *7-8 (D. Neb. Aug. 9, 2023) (rejecting Morningstar Lifetime Moderate Index comparators for challenged TDFs);

5

*Riley v. Olin Corp.*, 2023 WL 371872, at *4 (E.D. Mo. Jan. 24, 2023) (rejecting other Morningstar category comparators); *Evans v. Associated Banc-Corp*, 2022 WL 4638092, at *7 (E.D. Wis. Sept. 30, 2022) (same); *Anderson v. Intel Corp. Inv. Policy Comm.*, 579 F. Supp. 3d 1133, 1150-51 (N.D. Cal. 2022) (rejecting Morningstar "peer group category" as comparator for TDFs). To plead a meaningful benchmark, those courts have held, a plaintiff must provide specific information about the strategy, style, holdings, aims, and risk level of the challenged fund and the proposed comparators. *Fitzpatrick*, 2023 WL 5105362, at *7-8; *Riley*, 2023 WL 371872, at *4; *Evans*, 2022 WL 4638092, at *7; *Anderson*, 579 F. Supp. 3d at 1150-52.[4] Indeed, the MTD Order relied on precisely that requirement in dismissing the prior iteration of Plaintiffs' underperformance claim. Doc. 42 at 10-11. Yet the Complaint provides none of the necessary information.

To be sure, Plaintiffs cite four decisions that accepted Morningstar-based comparators in declining to dismiss imprudence claims. Pls. Br. 7-8.[5] But those decisions are easily distinguished. In each case, the challenged fund appears to have actually been placed in the same Morningstar category as the proposed comparators. *Gaines v. BDO USA, LLP*, 2023 WL 2587811, at *1 (N.D. Ill. Mar. 21, 2023); *Dover v. Yanfeng US Auto. Interior Sys. I LLC*, 563 F. Supp. 3d 678, 688 (E.D. Mich. 2021); *Brown-Davis v. Walgreen Co.*, 2020 WL 8921399, at *1 (N.D. Ill. Mar. 16, 2020); *Snyder v. UnitedHealth Grp., Inc.*, 2021 WL 5745852, at *1 (D. Minn. Dec. 2, 2021). Plaintiffs in some of the cases provided more detail about the Morningstar comparators or supplied other information that allowed an inference of imprudence. *Gaines*, 2023 WL 2587811, at *5-6; *Snyder*,

---

[4] Plaintiffs try to distinguish *Anderson* because the challenged TDFs there included "Non-Traditional Investment" assets, but the portion of *Anderson* rejecting the Morningstar "peer group category" as a meaningful benchmark does not even mention, much less rely on, inclusion of those assets. 579 F. Supp. 3d at 1150-52. In any event, Plaintiffs do not allege that the Marmon TDFs (or the Comparator Funds) exclude "Non-Traditional Investment" assets.

[5] Plaintiffs also cite *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 32 (1st Cir. 2018), but it addressed how to calculate loss, not how to plead imprudence.

2021 WL 5745852, at *3-4. And most of the decisions appear to have mistakenly assumed that courts must accept the aptness of Morningstar-category comparators at the dismissal stage. *Dover*, 563 F. Supp. 3d at 688; *Brown-Davis*, 2020 WL 8921399, at *1-2; *Snyder*, 2021 WL 5745852, at *3-4; *contrast supra* pp. 5-6 (citing cases rejecting that assumption); *infra* p. 7 (same).

Pushing the same mistaken assumption, Plaintiffs further argue that comparator aptness is a factual question that cannot be resolved on a motion to dismiss. But decisions from the Seventh Circuit, this District, and many other courts—including the MTD Order (Doc. 42 at 10-11)—have dismissed imprudence claims because the pleaded facts do not show the proposed comparators to be meaningful benchmarks. *Albert v. Oshkosh Corp.*, 47 F.4th 570, 582 (7th Cir. 2022); *Luckett v. Wintrust Fin. Corp.*, 2023 WL 4549620, at *3 (N.D. Ill. Jul. 14, 2023); *Coyer v. Univar Sols. USA Inc.*, 2022 WL 4534791, at *6 (N.D. Ill. Sept. 28, 2022).[6] Rejecting the notion that naked assertions of compatibility open the door to discovery in prudence cases, those decisions carefully scrutinize the available details about the challenged and comparator funds to determine whether there is "a sound basis for comparison—a meaningful benchmark." *Albert*, 47 F.4th at 582; *see, e.g.*, *Luckett*, 2023 WL 4549620, at *3; *Matney*, 80 F.4th at 1152-55; *Matousek*, 51 F.4th at 280-82; *Smith*, 37 F.4th at 1166-67. Indeed, without such scrutiny, no comparison could be deemed *sound*, and no benchmark *meaningful*. Plaintiffs' argument that aptness evaluations are forbidden at the dismissal stage thus flatly contradicts the sound-comparison/meaningful-benchmark pleading requirement adopted by the Seventh Circuit (and other courts).[7]

---

[6] *See also Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1152-55 (10th Cir. 2023); *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 280-82 (8th Cir. 2022); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166-67 (6th Cir. 2022); *Fitzpatrick*, 2023 WL 5105362, at *7-8; *Anderson*, 579 F. Supp. 3d at 1150-52; Defs. Br. 8-13 (citing cases).

[7] Plaintiffs cite a few decisions declining to consider aptness arguments (Pls. Br. 9-10), but most have been superseded by the Sixth Circuit's decision in *Smith*, 37 F.4th at 1166-67. The others likewise predate the recent dismissal rulings based on inaptness and are not controlling here.

Put simply, Plaintiffs have not pleaded the required meaningful benchmark.

### C. Plaintiffs Have Not Pleaded Any Other Indicia Of Imprudence.

Plaintiffs fare no better in responding to Defendants' showing that the Complaint fails to plead other indicia of imprudence. Defs. Br. 12-14. Plaintiffs concede, as they must, that there is nothing *per se* imprudent about creating a custom TDF. Pls. Br. 13. Plaintiffs thus focus on their allegation that Marmon's Retirement Administrative Committee (the "Committee") violated the Plan's Investment Policy Statement ("IPS") by selecting TDFs without performance histories. Pls. Br. 12; Compl. ¶¶ 98, 100. They do not, however, disagree that the IPS provision at issue—stating that "[f]und specific performance will be evaluated over trailing 3-year and 5-year periods"— comes from a section of the IPS addressing benchmarks for already selected funds. Doc. 52-1 at 7 (IPS). Nor do they cite anything in the IPS indicating that the provision applies to the selection of new funds or prohibits the Committee from selecting funds without at least three years of returns.

All Plaintiffs say is that "there is no logical reason to have a different process for evaluating existing funds as opposed to new funds." Pls. Br. 12. But they do not cite any support for that opinion. Nor do they explain why it would warrant rewriting the IPS's plain language. In fact, there are many logical reasons to have different processes for fund selection and monitoring. Selection focuses on choosing a fund with the desired strategy, management, style, and risk level; monitoring focuses on ensuring the fund is meeting those objectives and performing as expected. For example, consistent with Department of Labor guidance (*see* Defs. Br. 12-13), plan fiduciaries might want to consider custom funds, which lack performance history but may meet plan objectives, such as encouraging plan participation. *See also id.* at 13 (citing cases rejecting imprudence claims based on lack of performance history).

Plaintiffs, in sum, have pleaded no indicia of imprudence.

## II. Plaintiffs Fail To State A Monitoring Claim.

Plaintiffs' only response to Defendants' arguments for dismissal of the monitoring claim against Marmon and its Board of Directors (Defs. Br. 14) is that the claim should survive because the underlying imprudence claim against the Committee should survive. Pls. Br. 14. But, as detailed above, the imprudence claim fails. And, even if that were not so, Defendants have offered two other grounds for dismissal—the factual basis for, and duplicative nature of, the monitoring claim (Defs. Br. 14)—which Plaintiffs completely ignore and thus have forfeited any opposition to. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

## III. Plaintiffs Cannot Bring A Class Or Representative Action.

Finally, Plaintiffs fail to save their class and representative claims from Defendants' alternative showing that, if this suit proceeds at all, the Plan requires it to "proceed solely on an individual basis" and not as class, collective, or representative action. Defs. Br. 15; Doc. 52-2 at 8th Am. § 13.14 (Plan).

Plaintiffs first argue that the Plan's individual-action requirement "impermissibly prohibits Plaintiffs from seeking plan-wide relief." Pls. Br. 14. Not so. The individual-action requirement does not affect available remedies. It merely provides that Plan participants cannot bring claims on behalf of others. And the Seventh Circuit has held that plan provisions simply "funnel[ing] … participants away from class actions" and barring "plan-wide representation" create no problem under ERISA. *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 622 (7th Cir. 2021); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407-08 (2010) (class action cannot "enlarge or modify any substantive right" or alter "available remedies").[8]

---

[8] In arguing otherwise, Plaintiffs inexplicably cite the district court decision that the Seventh Circuit narrowed in *Smith* by ruling that the only problem with the provision challenged there was

9

Plaintiffs also argue that they are not bound by the individual-action requirement because they supposedly did not "knowingly agree" to it. But, as the Seventh Circuit has explained, a plan beneficiary, "though not consulted or consenting, ordinarily is bound" by unilaterally adopted plan provisions. *Mathews v. Sears Pension Plan*, 144 F.3d 461, 465 (7th Cir. 1998); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442 (1999) ("ERISA provides an employer with broad authority to amend a plan."). And courts have applied that rule to class-action waivers. *E.g.*, *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 512-14 (9th Cir. 2019); *Robertson v. Argent Trust Co.*, 2022 WL 2967710, at *6 (D. Ariz. Jul. 27, 2022). As Plaintiffs note, the district court decision in *Smith* goes the other way. *Smith*, 2020 WL 4926560, at *2-3. That decision, however, relied on inapplicable Missouri law and a ruling reversed by the Ninth Circuit (*Dorman*, 780 F. App'x at 512-14), conflicts with *Mathews*, and was expressly not affirmed on lack-of-consent grounds (*Smith*, 13 F.4th at 623).[9]

## CONCLUSION

For the foregoing reasons, the Court should dismiss this case with prejudice.

---

that it (unlike the provision at issue here) prohibited seeking any remedy that would provide relief to anyone else. *Smith*, 13 F.4th at 616, 621-23, *aff'g*, *Smith v. GreatBanc Trust Co.*, 2020 WL 4926560 (N.D. Ill. Aug. 21, 2020). They also cite an irrelevant Second Circuit decision merely holding that the language of an employment-agreement arbitration provision did not cover an ERISA claim. *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 180-85 (2d Cir. 2021).

[9] Plaintiffs' other authority on this subject not only relied on the ruling reversed by the Ninth Circuit in *Dorman* but also concluded that the challenged arbitration provision did not apply to former employees and was adopted after the plaintiff cashed out. *Brown v. Wilmington Trust, N.A.*, 2018 WL 3546186, at *3-8 (S.D. Ohio Jul. 24, 2018). While Plaintiffs allude to the possibility that one or more them might not have been "in the Plan" when the individual-action requirement was adopted (Pls. Br. 15), they point to no factual allegations as to the who, when, and how of any Plan departures. Nor do they show that such circumstances would matter given that (a) the "Participants" subject to the individual-action requirement include "Former Participants" (Doc. 52-2 at Plan § 2.38 & 8th Am. § 13.14), and (b) the Plan has always reserved to the Plan Administrator "the right to amend the Plan at any time" while providing that "all persons claiming any interest hereunder shall be bound thereby" (*Id.* at Plan § 14.01).

10

Dated: January 23, 2024

E. Brantley Webb
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000
bwebb@mayerbrown.com

Respectfully submitted,

/s/ *Nancy G. Ross*
Nancy G. Ross
J. Gregory Deis
Joshua D. Yount
Elaine Liu
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
nross@mayerbrown.com
gdeis@mayerbrown.com
jyount@mayerbrown.com
eliu@mayerbrown.com

*Counsel for Defendants Marmon Holdings, Inc., the Board of Directors of Marmon Holdings, Inc., and the Marmon Retirement Administrative Committee*

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 23, 2024, I caused a true and correct copy of the foregoing document to be filed electronically. Notice of the filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Dated: January 23, 2024                      By: /s/ *Nancy G. Ross*
                                                            *Attorney for Defendants*