## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER R. LARD, JOHN G. JUERGENS, GERALD L. ROBINSON, SCOTT W. ANDERSON, THOMAS A. PITERA, SHARON BRADLEY-SMITH and TORANZ J. PLUMMER, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) | No. 22 cv 04332

Judge Jeffrey I. Cummings |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| MARMON HOLDINGS, INC., THE BOARD OF DIRECTORS OF MARMON HOLDINGS, INC., MARMON RETIREMENT ADMINISTRATIVE COMMITTEE and JOHN DOES 1–30, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jennifer R. Lard, John G. Juergens, Gerald L. Robinson, Scott W. Anderson, Thomas A. Pitera, Sharon Bradley-Smith, and Toranz J. Plummer (collectively, "plaintiffs"), bring this putative class action on behalf of the Marmon Employees' Retirement Plan ("Plan"), alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1109 and 1132, by Marmon Holdings, Inc. ("Marmon"), its Board of Directors (the "Board"), its Retirement Administrative Committee (the "Committee"), and additional unnamed Defendants ("John Does 1-30"), (collectively, "defendants"). (Dckt. #46). Plaintiffs allege that defendants breached their fiduciary duty of prudence by "select[ing] and retain[ing] investment options in the Plan despite their severe underperformance compared to other comparable investments." (*Id.* ¶107). Plaintiffs also allege that Marmon and the Board breached their duty

to monitor the Committee. (*Id.* ¶115). Defendants move to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendants' motion, (Dckt. #52), is granted.

## I.      BACKGROUND

### A.      Factual Background

The following facts are taken from plaintiffs' second amended complaint, ("SAC"), and the documents attached to the SAC as exhibits.[1] (Dckt. #46).

Marmon is a holding company comprised of eleven business groups. (*Id.* ¶27). It sponsors the Plan, (*id.*), a "defined contribution" plan under which eligible employees may make tax-advantaged contributions to an individual investment account from the employee's pay. (*Id.* ¶¶45–48). In addition, Marmon may match a percentage of those contributions and/or provide additional discretionary contributions. (*Id.* ¶¶ 47–48).

Marmon, a named fiduciary of the Plan, appointed the Committee to "ensure that the investments available to the Plan's participants [we]re appropriate, had no more expense than reasonable and performed well as compared to their peers." (*Id.* ¶¶27–28). Thus, the Committee was tasked with selecting and evaluating investment options available to Plan participants. (*Id.* ¶34). Relevant here, in April 2017, the Committee created and added certain "target date funds" as investment options to the Plan. (*Id.* ¶¶66, 98).

A "target date fund," (or TDF), is an investment vehicle—made up of multiple types of assets, including equity (stocks) and fixed income (bond) securities—that adjusts over time

---

[1] When resolving a motion under Rule 12(b)(6), "in addition to the allegations set forth in the complaint itself," the Court may consider, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

based on the participant's anticipated retirement date. (*Id.* ¶¶67, 70–71). For example, an investor who expects to retire in five years can select a "2030" fund, and as 2030 approaches, the fund's investment manager will adjust the underlying asset mix to become more conservative. (*Id.* ¶73).

Plaintiff alleges that the Marmon TDFs underperformed compared to six similar TDFs— namely, the T.Rowe Price Retirement, American Funds, Mutual of America, MFS Lifetime, Callan GlidePath and Voya Target Solution target date suites (the "Comparator Funds")—and three similar indices—namely, the OE Benchmark, OE Peer Group Median, and SA Peer Group Median (the "Comparator Indices"). (*Id.* ¶¶91–92, 100). Plaintiffs allege that the Comparator Funds are suitable benchmarks for the Marmon TDFs because Morningstar, an accepted financial industry fund database, would likely place the Marmon TDFs in the same category group as the Comparator Funds, based on the funds' underlying holdings. (*Id.* ¶¶92, 95). The performance of the Marmon TDFs lagged behind the performance of the Comparator Funds and Comparator Indices in 2018. (*Id.* ¶99). Despite the Marmon TDFs' underperformance in 2018, the Committee added additional Marmon-created TDFs in April 2019. (*Id.* ¶98). The performance of the Marmon TDFs continued to lag behind the performance of the Comparator Funds and Comparator Indices in 2019. (Dckt. #48 at 1).

Plaintiffs also allege that the "[t]he performance of the Marmon [TDFs] lagged behind the performance of the applicable Comparator Funds for [2020–2022] . . .," (Dckt. #46 ¶97). However, as an exhibit ("Appendix B") attached to the SAC illustrates, the relevant Marmon TDFs *outperformed* thirty of seventy-two Comparator Funds and Comparator Indices in 2020, fifty-one of seventy-eight Comparator Funds and Comparator Indices in 2021, and forty-six of eighty Comparator Funds and Comparator Indices in 2022. (Dckt. #46-2). The depiction of the

performance of the Marmon TDFs vis-à-vis the Comparator Funds that is shown in Appendix B to the SAC controls over the contrary allegations in the SAC itself. *See, e.g.*, *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006).

### B. Procedural Background

Plaintiffs filed this suit against defendants on August 16, 2022. (Dckt. #1). Defendants moved to dismiss, prompting plaintiffs to file an amended complaint on November 7, 2022. (Dckt. ##14, 18). In the amended complaint, plaintiffs alleged that defendants breached their fiduciary duty of prudence imposed by §404(a) of ERISA, 29 U.S.C. §1104(a), by subjecting Plan participants to excessive recordkeeping and administrative fees and by creating a suite of custom retirement funds that underperformed other commercially available alternatives. (Dckt. #18). Plaintiffs also alleged that Marmon and the Board failed to monitor the Plan's other fiduciary, the Committee. (*Id.*).

Defendants made a motion to dismiss the amended complaint, which Judge Blakey granted, and dismissed the complaint without prejudice and with leave to amend. *See Lard v. Marmon Holdings, Inc.*, No. 1:22-CV-4332, 2023 WL 6198805, at *5 (N.D.Ill. Sept. 22, 2023). To reach this decision, Judge Blakey explained that the Court could not infer imprudence where plaintiffs compared only "a single year of returns." *Id.* at *4. Plaintiffs then filed the SAC. In it, plaintiffs renewed their breach of fiduciary duty of prudence claim on the grounds that the defendants chose the underperforming Marmon TDFs in lieu of commercial alternatives, and because their choice to create their own TDFs without any performance history violated Marmon's Investment Policy Statement ("IPS"), which states "[f]und specific performance will be evaluated over trailing 3-year and 5-year periods on a net of fee basis." (Dckt. #46 ¶98).

4

Plaintiffs also repleaded their failure to monitor claim in the SAC. (*Id.* ¶¶111–17). Defendants have moved to dismiss both claims under Rule 12(b)(6).

## II.    LEGAL STANDARD

A party may move to dismiss a claim pursuant to Rule 12(b)(6) it if fails "to state a claim upon which relief may be granted," and such a motion tests the legal sufficiency of the complaint and not the merits of the case. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 887 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hess v. Garcia*, 72 F.4th 753, 758 (7th Cir. 2023) (cleaned up). The Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in the [non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

## III.    ANALYSIS

Defendants move to dismiss both counts of the SAC. The Court addresses defendants' arguments below.

### A.    Plaintiffs Have Failed to Properly Allege a Breach of Duty of Prudence Claim.

A fiduciary must discharge his duties "with the care, skill, prudence, and diligence" as would a prudent person under the same circumstances. 29 U.S.C. §1104(a)(1)(B). To state a claim for a violation of fiduciary duty, a plaintiff must establish: "(1) that the defendants are plan fiduciaries; (2) that the defendants breached their fiduciary duties; and (3) that the breach caused harm to the plaintiff." *Jenkins v. Yager*, 444 F.3d 916, 924 (7th Cir. 2006) (cleaned up). "Importantly, the prudence standard is processed-based, not outcome based." *Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 WL 3578022, at *4 (N.D.Ill. July 1, 2020). Thus, a

plan's mere underperformance, absent any allegations of imprudence, is not actionable. *See DeBruyne v. Equitable Life Assurance Soc'y of the United States*, 920 F.2d 457, 465 (7th Cir. 1990).

Again, in the SAC, plaintiffs allege that defendants "selected and retained investment options in the Plan despite their severe underperformance compared to other comparable investments." (Dckt. #46 ¶107). Defendants' conduct and decisions, plaintiffs claim, "cost the Plan and its participants millions of dollars." (*Id.* ¶13). Defendants argue the facts alleged in support of these allegations, however, fail to plausibly support them. The Court agrees.

The parties devote a significant portion of their briefing to plaintiffs' selection of the Comparator Funds and Comparator Indices. Assuming, without deciding, that plaintiffs' selected funds and indices are valid comparators, the Court finds that plaintiffs' breach of fiduciary duty claim still fails for the reasons that follow.

First, plaintiffs' allegations that the Marmon TDFs underperformed do not create an inference of imprudence because they remain improperly based on short-term performance. *Cutrone v. Allstate Corp.*, No. 20 CV 6463, 2025 WL 306179, at *8 (N.D.Ill. Jan. 27, 2025). Although plaintiffs amended their complaint to offer new allegations that the Marmon TDFs underperformed for *two* years—rather than the single year alleged in their prior unsuccessful complaint—their new allegations do not remedy the previous deficiencies. As Judge Blakey noted when he dismissed plaintiffs' prior complaint, "[s]hort term performance is an unreliable indicator of overall performance because it can mask year to year performance and is a poor

predictor of future performance." *Lard*, 2023 WL 6198805, at *4, *quoting Evans v. Associated Banc-Corp*, No. 21-C-60, 2022 WL 4638092, at *6 (E.D.Wis. Sept. 30, 2022).

Indeed, courts have found that underperformance periods of up to five years still do "not suffice to plausibly plead an imprudent decision" particularly in "the lifespan of a fund that is supposed to grow for fifty years." *See*, *e.g.*, *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022).[2] Thus, plaintiffs' amended allegations that the Marmon TDFs underperformed in 2018 and 2019 are still too short-term to support their allegations that the Marmon TDFs "materially" and "consistently" underperformed. (Dckt. #46 ¶91); *Jenkins*, 444 F.3d at 925–26 (finding defendant did not breach his fiduciary duties by retaining funds that underperformed for three years); *Luckett v. Wintrust Fin. Corp.*, No. 22-CV-03968, 2024 WL 3823175, at *5 (N.D.Ill. Aug. 14, 2024) ("three and five-year horizons are relative blips in the timelines of plans that are meant to last four or five decades."); *Dorman v. Charles Schwab Corp.*, No. 17-CV-00285-CW, 2019 WL 580785, *6 (N.D.Cal. Feb. 8, 2019) (concluding plaintiff did not sufficiently allege a breach of fiduciary duty claim where the underperformance period was three to five years); *Davis v. Salesforce.com, Inc.*, No. 20-CV-01753-MMC, 2020 WL 5893405, at *4 (N.D. Cal. Oct. 5, 2020) (allegations "based on five-year returns are not sufficiently long-term to

---

[2] In *Smith*, the Sixth Circuit explained why a relatively brief underperformance period is insufficient to create an inference of imprudence as follows:

> Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that breaches a fiduciary duty. Precipitously selling a well-constructed portfolio in response to disappointing short-term losses, as it happens, is one of the surest ways to frustrate the long-term growth of a retirement plan . . . Any other rule would mean that every actively managed fund with below-average results over the most recent five-year period would create a plausible ERISA violation. Unless and until it becomes feasible to have all managed funds perform above average, that would lead to the disappearance of this option in ERISA plans.

*Smith*, 37 F.4th at 1166. This reasoning applies with even greater force here, where only a two-year period of underperformance is properly alleged.

state a plausible claim of imprudence"); *Patterson v. Stanley*, No. 16-CV-6568 (RJS), 2019 WL
4934834, at *10 (S.D.N.Y. Oct. 7, 2019) (noting that "consistent, ten-year underperformance
may support a duty of prudence claim" if the underperformance is "substantial").

Nor does plaintiffs' general allegation that the Marmon TDFs "significantly
underperformed industry accepted benchmarks" adequately support its claim.  To the contrary,
the SAC and its exhibits demonstrate that in 2018 and 2019 the Marmon TDFs generally never
underperformed the closest comparator by more than approximately two percent.  "This is not
the type of substantial underperformance over a lengthy period that gives rise to a plausible
inference that a prudent fiduciary would have removed these funds from the plan's menu of
options."  *Luckett*, 2024 WL 3823175, at *5 (dismissing imprudence claim where the fund
underperformed by no more than "3 percent in any given quarter."); *Jones v. DISH Network
Corp.*, No. 22 CV 167, 2023 WL 2644081, at *7 (D.Colo. Mar. 27, 2023) (1% to 3.5%
underperformance insufficient); *Ruilova v. Yale-New Haven Hosp., Inc.*, No. 22 CV 111, 2023
WL 2301962, at *15 (D.Conn. Mar. 1, 2023) (same for underperformance of up to 3.63%); *Cho
v. Prudential Ins. Co. of Am.*, No. 19-19886, 2021 WL 4438186, at *9 (D.N.J. Sept. 27, 2021)
(holding insufficient "five-year trailing performance had underperformance percentages ranging
from .07% to 3.71% . . ."); *cf. Jacobs v. Verizon Commc'ns, Inc.*, No. 16 CIV. 1082 (PGG), 2017
WL 8809714, at *2, *9 (S.D.N.Y. Sept. 28, 2017) (plaintiff adequately pleaded a duty of
prudence violation by showing ten-year annualized underperformance of 8.63%).

Plaintiffs do not dispute that the Marmon TDFs generally performed within a few percent
of the next closest Comparator Fund or Comparator Index[3] and cite no cases finding a similar

---

[3] In plaintiffs' response to defendants' notice of supplemental authority and notice of supplemental
authorities, (Dckt. #66), plaintiffs state "the Marmon TDFs' poor returns were more than 5%, with some
vintages underperforming by more than 15%."  (*Id.* at 2).  Plaintiffs do not identify which year(s) they are

level of underperformance sufficient to state a claim. The Court therefore finds plaintiffs'

allegations insufficient to show that defendants engaged in an imprudent selection or monitoring

process.[4]

Finally, plaintiffs have failed to allege any other indicia of imprudence. Plaintiffs

highlight the IPS provision which states "[f]und specific performance will be evaluated over

trailing 3-year and 5-year periods on a net of fee basis." According to plaintiffs, it was therefore

imprudent for defendants to choose the custom, Marmon TDFs over established, alternative

TDFs. (Dckt. #57 at 18). But, as defendants point out, the portion of the IPS quoted in the SAC

appears in the section describing the benchmark indices for the Plan's *existing* investment funds,

and therefore does not speak to the *selection* of funds. (Dckt. #52 at 20). Plaintiffs do not

disagree with defendants' reading of the IPS but contend that there "is no logical reason to have

a different process for evaluating existing funds as opposed to new funds." (Dckt. #57 at 17).

This bald assertion, without more, fails to support an inference of imprudence. *See Bracalente v.*

*Cisco Sys., Inc.*, No. 22-CV-04417-EJD, 2024 WL 2274523, at *5–6 (N.D.Cal. May 20, 2024)

(no inference suggesting inappropriate monitoring of TDFs where plan's IPS did not require the

performance of the TDFs be measured against specific indices.); *Enstrom v. SAS Inst.*, No. 5:24-

CV-105-D, 2025 WL 685219, at *5 (E.D.N.C. Mar. 3, 2025) (dismissing ERISA breach of

---

referring to and only provide a general cite to the graphs attached as Appendix B to the SAC. Furthermore, the Court, based on its own review of Appendix B, did not identify any instances where the Marmon TDFs underperformed by more than fifteen percent. In fact, in most instances, the Marmon TDFs performed within five percent or less of the top-performing fund. And, in many instances in 2020 and the majority of instances in 2021 and 2022, the Marmon TDFs in fact outperformed the Comparator Funds and Comparator Indices. (Dckt. #46-2).

[4] The Court takes note that plaintiffs filed six supplemental authorities in support of their opposition to defendants' motion to dismiss. (Dckt. ##60, 61, 66, 70). These six non-binding cases are unpersuasive because they either do not address short-term performance, do not apply the meaningful benchmark requirement, or involve periods that exceed the two-year period at issue in this matter.

fiduciary duty claim where, among other things, the IPS provision cited by plaintiffs did not require the committee to offload the JPM funds and plaintiffs did not cite an IPS provision that defendants violated by adding the JPM funds to the plan.).

Accordingly, the Court finds that plaintiffs have failed to properly allege an ERISA breach of fiduciary duty claim.

### B. Plaintiffs' Breach of Duty to Monitor Claim Fails with Their Breach of Duty of Prudence Claim.

Plaintiffs also allege that Marmon and the Board failed to monitor the Committee. As Judge Blakey previously explained, "Plaintiffs' failure to monitor claim must 'rise or fall' with their duty of prudence claims." *Lard*, 2023 WL 6198805, at *5 (citing *Albert v. Oshkosh Corp.*, 47 F.4th 570, 583 (7th Cir. 2022)); *Rogers v. Baxter Int'l Inc.*, 710 F.Supp.2d 722, 740 (N.D.Ill. 2010) (finding that a failure to monitor claim is "derivative in nature and must be premised" on "an underlying breach of fiduciary duty"); *Mazza v. Pactiv Evergreen Servs. Inc.*, No. 22 C 5052, 2023 WL 3558156, at *4 (N.D.Ill. May 18, 2023) (denying dismissal of failure to monitor claim because plaintiff "sufficiently pleaded his breach of the duty of prudence claim")). Because plaintiffs have failed to properly plead a breach of the duty of prudence claim, plaintiffs' duty to monitor claim must likewise be dismissed.[5]

### CONCLUSION

For the reasons explained above, defendants' motion to dismiss, (Dckt. #51), is granted. Plaintiffs, who have requested leave to amend if this Court grants defendants' motion, are granted one last chance to file an amended complaint to the extent they can do so consistent with

---

[5] Defendants also argue that a Plan amendment containing a class action waiver precludes plaintiffs from proceeding on a class basis. (Dckt. #52 at 21). In light of the rulings above, the Court need not reach this issue.

the authority set forth within this Memorandum Opinion & Order and their obligations under Federal Rule of Civil Procedure 11.  Plaintiffs must file their amended complaint no later than June 4, 2025.

**Date: May 13, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**